I. II. KEARNEY, Administrator, *v.* S. C. VANN and ARRINGTON et al.

(Filed 15 March, 1911.)

1. Interpretation of Statutes—Intent.

Statutes should be interpreted to effect the intent of the Legislature, and enforced without reference to particular cases presenting a hardship.

2. Same—Words Employed.

In interpreting a statute the intent is to be first sought in the meaning of the words used, and when they are free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the framers of the instruments, no other means of interpretation should be resorted to.

3. Interpretation of Statutes—Intent—Common Law—Relative Acts.

Statutes are to be construed with reference to the common law in existence at the time of their enactment, and in connection with other statutes which relate to the same subject-matter.

4. **Interpretation of Statutes—Intent—Object—Defects—Evil—Remedy.**

Every statute must be construed with reference to the object to be accomplished by it; and in order to ascertain this object, it is proper to consider the occasion for its enactment, the effects or evils of the former law, and the remedy provided by the new one.

5. **Interpretation of Statutes—Common Law—Relevant Acts—Implication—Married Women—Separate Realty—Husband and Wife—Work Done.**

At the time of the enactment of the statute making Revisal, sec. 2016, applicable to the property of married women, the common law declared that improvements placed on the lands of a married woman by her husband were intended for a gift; and Revisal, sec. 2107, provided that no contract between them "should be valid unless such contract was in writing and proved as required for conveyances at law, and unless it appeared to the officer taking her private examination that the contract was not unreasonable and not injurious to her, etc.: *Held*, the law does not repeal an older statute by implication, and that the statute giving a lien on the property of a married woman for work done on her land, amending section 2016, Revisal, does not include a lien on the wife's land filed by her husband for work done, etc.; and that the husband having no lien, his heirs can acquire none after his death.

6. **Same—Contracts.**

The purpose of Revisal, sec. 2107, was to protect a married woman from the influence and control which the husband is presumed to have over her by reason of the marital relation, by an adjudication of the probate officer as to her interests; and the requirements imposed by this section are not dispensed with under the provisions of Revisal, sec. 2016, giving a lien on her lands for labor done, etc., when the lienor is her husband, though it is otherwise as to her written consent in dealing with a stranger, under Revisal, sec. 2094.

7. **Married Women—Separate Realty—Husband and Wife—Work Done—Liens—Equity.**

Equity will not interfere to give a husband a lien on his wife's land for work done, etc., by reason of the consequent improved value of the wife's land.

. **Married Women—Separate Realty—Husband and Wife—Contracts Between—Notes.**

The fact that a wife executed a note to her husband for work, etc., done by him on her land, does not affect the question of a

lien filed by the husband therefor, as the presumption is that the wife executed the note under the direction of the husband.

CLARK, C. J., dissenting.

APPEAL from *Ward, J.,* at January Term, 1911, of FRANK-LIN.

The plaintiff, administrator of Annie Fuller, commenced this proceeding to sell land for assets to pay debts. The only claim in dispute was one in favor of the administrator of Mark Fuller, husband of Annie M. Fuller, for $700, for building a house on his wife's land. The only evidence introduced at the trial was the following:

I. H. Kearney, witness for plaintiff, testified as follows: "I am the administrator of Annie M. Fuller, deceased. I was well acquainted with Annie M. Fuller and her husband, M. A. Fuller. I know the lot in the town of Franklinton owned by Annie M. Fuller described in the petition in this cause. The purchase price of the lot was $150, and the deed was made to Annie M. Fuller. It is situated only a few hundred yards from my place. I know that M. A. Fuller built a home on it after it was bought. He was several years completing the house. I sold him the timber and material for the house and he paid me for it. He did the labor himself. I do not remember the exact date when it was completed, but I know it was the year she died, and within less than one year prior to the filing of the lien. I know this because I remember when the lien was filed, and that it was within twelve months from the completion of the house. I calculated the time, and while I cannot remember the exact dates, I did know them, and know that it was within one year of the completion of the work. I think the painting of the house and putting on the locks and probably some inside work was the last work done upon it. Mark Fuller paid for it all; his wife had no source of income. Just before she died she was contemplating going North to teach school to get some money to pay on the building." The witness here was shown a paper-writing (Exhibit "A"), and testifies that he knows the handwriting of Annie M. Fuller, and that the paper shown him and the signature to it are in her handwriting, and that it

was exhibited to ·him by M. A. Fuller. The execution of the note is admitted by the defendants, and it is offered in evidence. Note is as follows:

$700.            FRANKLINTON, N. C., October 4, 1907.

One day after date I promise to pay to Mark A. Fuller or order seven hundred dollars, with interest from date at six per cent per annum; this note given for building house and improvements done on my property.

(Signed)   ANNIE M. FULLER.   (SEAL.)

A notice of lien was filed by the husband for work done and materials furnished during the years 1903-4-5-6-7 and 1908. His Honor held against the validity of the claim and denied the right to enforce a lien, and the plaintiff appealed.

*W. H. Yarborough and N. Y. Gulley for plaintiff.*
*William H. Ruffin and Jacob Battle for Fuller heirs.*

· ALLEN, J., after stating the case: This is the first time the question has been presented to this Court of the right of the husband to subject the real estate of the wife to a lien for "work and labor done and materials furnished." This right is claimed under the last clause of section 2016 of the Revisal, which section reads as follows:

"2016. Every building built, rebuilt, repaired, or improved, together with the necessary lots on which such building may be situated, and every lot, farm, or vessel, or any kind of property, real or personal, not herein enumerated, shall be subject to a lien for the payment of all debts contracted for work done on the same, or materials furnished. This section shall apply to the property of married women when it shall appear that such building was built or repaired on her land with her consent or procurement, and in such case she shall be deemed to have contracted for such improvements."

This statute was held to be valid as to the contracts of married women with strangers, in *Finger v. Hunter,* 130 N. C., 529, which is approved in *Ball v. Paquin,* 140 N. C., 95, and we do not doubt the power of the Legislature to include contracts between husband and wife.

The inquiry here is, Has it done so?

The object of all interpretation of statutes is to ascertain the meaning and intention of the Legislature, and to enforce it. The courts are not bound by the letter of the law, which has been denominated its "body," but may consider its spirit, which has been called its "soul." Nor can the courts, when the intention is once discovered, refuse to enforce it because the facts of some particular case present a seeming hardship.

This case is between the administrator of the husband and the collateral relations of the wife, but the statute must be construed as between the husband and the wife, because if the husband could not enforce the lien against his wife, his administrator, who can have no greater right, cannot do so against her heirs.

"In the construction, both of statutes and contracts, the intent of the framers and parties is to be sought, first of all, in the words employed, and if the words are free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation." Black Inter. Laws, 37.

The language under consideration is: "This section shall apply to the property of married women when it shall appear that such building was built or repaired on her land with her consent or procurement, and in such case she shall be deemed to have contracted for such improvement."

We do not think this was intended to embrace contracts with the husband. If it does, the husband and wife may be living together, and the husband may propose to build a house on her land, and if she consents for him to do so, he can have a lien, or if she asks him to build a house on a vacant lot belonging to her and he does so, the same result follows. In the one case she has "consented" and in the other has "procured" the building to be built on her land.

This construction is not in accordance with the relationship existing between husband and wife, as recognized by law, and would convert every gift of money used in improving her property into a liability. The presumption of law arising from the relationship of the parties is that improvements placed on the

land of the wife by the husband are a gift. *Arrington v. Arrington,* 114 N. C., 119. This view is further strengthened by the language, "she shall be deemed to have contracted for such improvements." The Legislature inserted this language because of the decisions of this Court, "that there must be a debt due from the owner of the property before there can be a lien." *Baker v. Robbins,* 119 N. C., 289; *Weathers v. Borders,* 124 N. C., 610; and in order to sustain the position of the plaintiff it must be held, not only that the husband has a lien, but that the relation of creditor and debtor exists between him and his wife.

When the language is of doubtful meaning, the courts may inquire as to the evils to be remedied.

The part of the section being considered was adopted by the Legislature in 1901 as an amendment to the original act, and prior to its enactment no case had been presented to this Court in which a wife had employed a husband to erect a building on her land, and in which, upon refusal on her part to pay, he had asked the courts to enforce a lien in his favor; but several cases had been considered involving the rights of strangers, in which it had been held that a lien could not be enforced against a married woman, although the improvements were made with her knowledge and consent and her property was enhanced in value. *Weir v. Page,* 109 N. C., 220; *Thompson v. Taylor,* 110 N. C., 70; *Weathers v. Borders,* 124 N. C., 610.

Is it not reasonable to conclude that the Legislature had in mind the law as declared in these cases, and, recognizing its injustice, was trying to remedy this evil, instead of having in contemplation that a case might arise of a husband who would build on his wife's land, with her consent, and then seek to sell her land to reimburse himself?

"Every statute must be construed with reference to the object to be accomplished by it. In order to ascertain this object, it is proper to consider the occasion and necessity for its enactment, the defects or evils in the former law, and the remedy provided by the new one." Cyc., vol. 36, 1110.

Again, statutes are to be construed with reference to the com-

mon law in existence at the time of their enactment, and in connection with other statutes which relate to the same subject-matter.

"Later statutes are considered as supplementary or complementary to the earlier enactments. In the course of the entire legislative dealing with the subject we are to discover the progressive development of a uniform and consistent design. . . . In the passage of each act, the legislative body must be supposed to have had in mind and in contemplation the existing legislation on the same subject, and to have shaped its new enactment with reference thereto. . . . To illustrate further, all the statutes of the same State, relating to the property rights and contracts of married women, removing their common-law disabilities, authorizing them to manage their separate estates, to engage in business, etc., are to be read and construed together as constituting one system." Black Inter. Laws, p. 204.

At the time this statute was enacted the common law declaring that improvements placed on the land of the wife by the husband were presumed to be a gift, and section 2107 of the Revisal, providing that no contract between husband and wife affecting or charging any part of her real estate, should be valid unless such contract was in writing and proved as required for conveyances at law, and unless it appeared to the officer taking her private examination that the contract was not unreasonable and not injurious to her, and that these facts should appear in the probate, were in force.

This presumption of law and this statute must be inoperative as applied to this case, if the contention of the plaintiff can be sustained. "The law does not favor the repeal of an older statute by mere implication. The implication, in order to be operative, must be necessary, and if it arises out of repugnancy between the two acts, the later abrogates the older only to the extent that it is inconsistent and irreconcilable with it." *Winslow v. Morton,* 118 N. C., 491.

The case of *White v. Wayne,* 25 N. Y., 332, is similar to this. The Legislature of New York passed an act authorizing mar-

ried women to devise or convey their real and personal property as if they were unmarried, and it was contended that this enabled the wife to convey to her husband. The Court says with reference to this contention: "Taking away that disability (the disability of married women to convey), she would have power to make all such conveyances as were not forbidden by special provisions of law; but such general statutes are never understood to overreach particular prohibitions, founded on special reasons of policy or convenience," and it was held that the deed was not valid.

In *Kneil v. Egleston,* 140 Mass., 202, it was held that the husband could not make a valid contract with his wife under a general statute allowing her to contract as a *feme sole.* To the same effect is *McCorkle v. Goldsmith,* 60 Mo., 479. The reasoning applies with great force to a statute guarding with such care the rights of the wife, and requiring a judicial investigation before she is made liable.

In *Thompson v. Thompson,* 218 U. S., 611, the wife sued the husband for damages for an assault, claiming the right to do so under a statute of the District of Columbia giving the right to married women to sue "for torts committed against them as if they were unmarried." The Court held that such an action could not be maintained at common law nor under the statute.

*Mr. Justice Day,* speaking for the Court, says: "It must be presumed that the legislators who enacted this statute were familiar with the long-established policy of the common law, and were not unmindful of the radical changes in the policy of centuries which such legislation as is here suggested would bring about. Conceding it to be within the power of the Legislature to make this alteration in the law, if it saw fit to do so, nevertheless such radical and far-reaching changes should only be wrought by language so clear and plain as to be unmistakable evidence of the legislative intention. Had it been the legislative purpose not only to permit the wife to bring suits free from her husband's participation and control, but to bring actions against him also for injuries to person or property, as though they were strangers, thus emphasizing and publishing

differences which otherwise might not be serious, it would have been easy to have expressed that intent in terms of irresistible clearness.

"We can but regard this case as another of many attempts which have failed, to obtain by construction radical and far-reaching changes in the policy of the common law, not declared in the terms of the legislation under consideration."

It is said, however, that if any effect is given to the statute, it must dispense with the written consent of the husband as to contracts made by her with a stranger as is required by section 2094 of the Revisal, and that there is the same reason for saying that section 2107 does not apply.

We do not think the same reason exists. The statute requiring the written consent of the husband when dealing with a stranger was to protect her against an improvident contract, and there was no such relationship between her and the stranger as raised a presumption of undue influence and fraud, while the statute regulating contracts between husband and wife was "to protect the wife from the influence and control which the husband is presumed to have over her by reason of the marital relation." *Sims v. Ray,* 96 N. C., 89. The law presumes that contracts between husband and wife affecting her real estate are executed under the influence and coercion of the husband, and to rebut this presumption and render the contract valid, an officer of the law must examine the contract, and be satisfied that she is doing what is reasonable and not hurtful to her, and so certify, and we do not think it was the purpose of the Legislature to abrogate these requirements.

We conclude, therefore, that the plaintiff is not entitled to a lien under the statute, and it is decided in *Weir v. Page,* 109 N. C., 223, that a charge cannot be established under principles of equity. In that case a stranger built a house on the land of a married woman, and in answer to the contention that equity would aid him, the Court says: "But counsel for the plaintiff says the defendant's property has been greatly enhanced in value by the work and labor done and the materials furnished, and that she enjoys the benefits of this increased value at the expense of the plaintiff, and upon broad

principles of equity, *ex equo et bono,* he is entitled to compensation and ought to be paid by the defendant, who enjoys the benefit of the increased value. The only answer to this—and so far as this Court is concerned or has power, it is conclusive—is that the law to which reference has been made clearly and explicitly declares otherwise, unless the work and labor had been done and the materials furnished under a contract allowed by law. It is the duty of this Court to construe and declare the law, and it is not within its province to make or alter it."

The facts of this particular case cannot change the construction of the statute, but when considered they do not rebut the presumption of a gift. It is true, the plaintiff introduced a note signed by the wife in October, 1907, about four years after the work was begun and when it was near completion, but the presumption of law is that this note was executed under the influence of the husband, and there was no evidence to the contrary.

No error.

CLARK, C. J., dissenting: In *Weir v. Page,* 109 N. C., 224, *Davis, J.,* referring to the fact that "the Constitution of North Carolina secures to every married woman the sole and separate estate in her real and personal property, independent of her husband, as if she were a *feme sole*," commented upon the state of the law, as construed by the courts, which exempted her property from lien for work and labor done and material furnished thereon, and suggested, speaking for the full Court, that her liabilities in dealing with her separate estate should be made commensurate with her rights, and that "such alterations in the law would prevent much injustice and many frauds." The Legislature of 1901, ch. 617, enacted what is now the last paragraph of Revisal, 2016, as follows: "This section shall apply to the property of married women when it shall appear that such building was built or repaired on her land with her consent or procurement, and in such case she shall be deemed to have contracted for such improvements."

This statute does not contain any provision "except when

the building or improvement shall have been put thereon by the husband." The Legislature did not see fit to insert such provision, and the Court has no authority to amend the statute by inserting it. It was a sage remark of *Mr. Justice Daniel,* "The Court should not be wiser than the law."

The Legislature knew enough to insert the exception if it had seen fit, for in the recent statute, ratified 6 March, 1911, the ·General Assembly enacted, "Every married woman shall be authorized to contract and deal so as to affect her real and personal property in the same manner and with the same effect as if she were unmarried," adding the exception that it should not apply to contracts between a wife and her husband. Revisal, 1907. The reason why the exception was incorporated in the last statute, and not in the former, is that Revisal, 1907, applies to contracts between the husband and wife affecting her estate generally where the transaction may be in secret; whereas Revisal, 2016, applies to betterments put upon her real estate in a public manner, where it still must be proven, to secure the lien, that they were placed on the land with the wife's consent or procurement.

Argument can be made why the Legislature of 1901 should have excepted improvements placed by the husband upon the wife's land. Such argument must necessarily rest upon the basis of the now obsolete conception of a wife, derived from more barbarous times, that she is a chattel belonging to her husband, and that hence, though a single woman is competent to control her property and make contracts, she loses her ability to do so upon becoming married, and only regains it when she becomes a widow.

The Constitution and laws of this and all other civilized States have abandoned that conception of a married woman, and she is now held as a *feme sole* in relation to her property and contract rights except where expressly restricted by some antiquated and unrepealed statute.

The argument on the other side is that if·the wife's property is not liable for betterments placed on it by her husband, when it is proven that it was done with her consent and procure-

154—21

ment, manifest injustice will often be done. In this very case the effect of denying this lien is that the wife and husband both being dead without leaving children, his next of kin lose $700 which he had placed on this property with her consent and procurement and for which she gave a written acknowledgment to him, and that her next of kin obtained the $700 which she admitted in writing belonged to her husband.

But the overwhelming consideration in the whole matter is that the Legislature did not write into the statute of 1901, now Revisal, 2016, any such exception, and that the courts have no right to amend the statute to conform to what they may think the Legislature ought to have done.

Writing provisions into a statute which the Legislature has not inserted is not only objectionable because it is beyond the just powers of the courts, but "judicial legislation" is necessarily retroactive and unjust, because it makes that to be the law which was not the law at the time the act was done. Had this exception been placed in the act of 1901 by the Legislature, and not by the courts now, the parties would. doubtless have acted in conformity to it. Its insertion now destroys the clear understanding between the husband and wife (as evidenced by the $700 note), is contrary to elementary justice, and not authorized by the statute. The courts should strictly observe the maxim, *"Ne sutor ultra crepidam,"* and not trench upon the province of the lawmaking department of the Government.

The Code, 1781, now Revisal, 2016, gave a lien on "every" building built, repaired, or improved, for work done or material furnished. It contained no exception whatever. Nevertheless, the Court saw fit to write into it an exception in favor of married women. That proved so inequitable that the Legislature added chapter 617, Laws 1901, now the second clause of Revisal, 2016. Now the Court is again asked to amend by writing another exception into the statute, excepting repairs furnished by a husband. In *S. v. Fulton,* 149 N. C., 485, where the word "every" was used, the Court refused to amend by writing into the statute the words "except a husband," as is asked in this case, even though that was a criminal statute, to

be construed strictly, and though to make such refusal the Court had to overrule the previous decision to the contrary in *S. v. Edens,* 85 N. C., 522. The words in this statute, "shall be deemed to have contracted," simply conform to the meaning of Revisal, 2016, as to every one, by giving a lien upon an implied contract, a proceeding *in rem,* a lien upon the property for the betterment, and not creating a debt against the owner upon an express contract, unless that is shown outside of the lien.

The note for $700 is not a debt against the estate of the wife, because of noncompliance with the requirements of Revisal, 1907. But it is sufficient, together with the other evidence, to make it a lien upon the property upon which the building was placed, for all has been done that is required by Revisal, 2016.