### Dick Harper v. The State.

#### No. 6369. Decided November 9, 1921.

**1.—Burglary—Jury and Jury Law—Grand Jury—Constitutional Law.**

A grand jury organized under the Constitution, Art. 5, Sec. 13, must be composed of twelve men, to present a valid indictment. Following Lott v. State, 18 Texas Crim. App., 627; and other cases, and under the statutes it is provided that all male persons over twenty-one years of age are competent jurors unless disqualified under some provisions of the law; and a grand jury composed of ten men and two women is not a duly organized grand jury under the Constitution and the Law, and the indictment for burglary found by them was correctly quashed and set aside.

**2.—Same—Amendment of State and Federal Constitution—Suffrage.**

Both the amendment to the State and the Federal constitutions show that the only subject in contemplation was the right of suffrage, and no attempt to enlarge any restrictions with reference to jury service was embraced. Following Ex parte Julia Grilli, 179 N. Y. Supplement.

**3.—Same—Suffrage—Jury Service—Constitutional Law.**

The right or duty to serve on grand juries cannot be confounded with the right to vote, and this court cannot with any fair construction of language say that the provisions in our Constitution and laws that grand juries shall be composed of twelve men means less than the plain words import, and the judgment must therefore be remanded and the cause dismissed.

Appeal from the District Court of McLennan. Tried below before the Honorable Richard I. Munroe.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Farmer & Farmer,* attorneys for appellant.—Cited cases in opinion.
*R. H. Hamilton,* Assistant Attorney General, for the State.

HAWKINS, Judge.—Appellant was convicted for burglary. Punishment was assessed at two years in the penitentiary.

Only one question is presented for review. It is admitted by the State that the grand jury which returned the indictment against appellant was composed of ten men and two women. Motion to quash the indictment and dismiss the prosecution thereunder was filed on the ground that the indictment was void, not having been returned by a grand jury composed of twelve men, as required by Article 5, Section 13 of the State Constitution, which reads as follows:

"Grand and petit juries in the district courts shall be composed of twelve men. . . ." '

That a constitutional grand jury, under such provision is to be composed of twelve men, and no other number, greater or less; and that such a grand jury alone can present a valid indictment, is not an open question in this State. Lott v. State, 18 Texas Crim. App. 627; McNeese v. State, 19 Texas Crim. App. 48; Smith v. State, 19 Texas Crim. App. 95; Williams v. State, 19 Texas Crim. App. 265; Ex parte Swain, 19 Texas Crim. App. 323; Rainey v. State, 19 Texas Crim. App. 479; Ogle v. State, 43 Texas Crim. Rep. 219.

After having declared specifically that "grand and petit juries in the District Courts shall be composed of twelve *men*," the constitution then leaves the further qualifications thereof to the Legislature, for under the head of "General Provisions," Sec. 19, Art. 16, we find: "The Legislature shall prescribe by law the qualifications of grand and petit jurors." Pursuant to this direction the Legislature in Art. 390, C. C. P. prescribes the general qualifications for grand jurors, and in Art. 400, C. C. P. provides that if less than twelve of those summoned are present, "The court shall order the sheriff to summon such additional number of persons as may be deemed necessary to constitute a grand jury of twelve *men*." The same Legislature in prescribing the general qualifications for petit jurors, and immediately preceding it, in Art. 5114, Vernon-Sayles Civil Statutes, declares: "All *male persons* over twenty-one years of age are competent jurors, unless disqualified under some provision of this chapter."

An examination of our Penal Code under the head of "Definitions" may throw some light on the question. A part of Art. 23 P. C. reads: "Words used in the masculine gender include the feminine also, unless by reasonable construction, it appears that such was not the intention of the language." But immediately preceding this, in Article 21, we find: "The word 'man' is used to signify a *male person* of any age; and the word 'woman' a *female* of any age."

In view of the foregoing provisions of our constitution and statutes it would seem the question should be decided in favor of appellant's contention, unless the recent amendments to the State and Federal constitutions giving to women the right to suffrage, ipso facto, confer upon them the qualifications to serve upon grand juries.

Sec. 1, Art. 6, of our State constitution enumerates certain things which absolutely disqualify a person from voting, and prior to the Acts of the thirty-sixth Legislature, Sec. 2, Art. 6, read: "Every *male person* subject to none of the foregoing disqualifications, who shall have attained the age of twenty-one years . . . shall .be deemed a qualified elector." The thirty-sixth Legislature, page 339, at its regular session, by joint resolution, proposed an amendment to the constitution so that Section 2, Article 6, should thereafter read: "Every person, male or female, subject to none of the foregoing disqualifica· tions, . . . shall be deemed a qualified elector."

The sixty-sixth Congress of the United States proposed an amend· ment to the Federal constitution which reads: "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex." Both the amend· ment to the State and Federal constitutions were adopted, and were in effect when the grand jury in question was organized. The amend· ments themselves, as well as the resolutions in connection therewith, show that the only subject in contemplation was the right of suffrage. No attempt to enlarge any restrictions with reference to jury service was embraced. If our constitution and laws, (which is the case in some states), made all qualified voters eligible for jury duty, the ques· tion would not even be debatable. But such is not the case. It is true all jurors are required to be qualified voters, but it does not fol· low by any means that all qualified voters are eligible as grand jurors. An unmarried man, though a voter, and in every other way desirable as a juror, if he chances not to be a householder or freeholder, is de· nied the privilege (if it be so considered), of being a juror. Many other qualified voters are not permitted to serve on juries.

The qualifications of jurors, as prescribed in the many States vary so considerably, and because of the recent date of the amendments in question, it is difficult to find precedent, but the exact question under consideration was passed upon by the New York Courts in the case of Ex parte Julia Grilli (179 N. Y. Supp.), decided January 6th, 1920. The law as it related to Kings County, New York, required the as· sessors, between certain dates each year, to return to the commissioner of jurors a written list containing the names of all persons who were liable to serve as trial jurors. The relator filed an application for a peremptory writ of mandamus to compel the board of assessors and the commissioner of jurors to complete the jury list of Kings County by including therein each and every woman in the county qualified and liable for jury duty. The first qualification for a juror under Sec. 686 of the Judiciary Law of that state is: "1. A male citizen of the United States, and a resident of that county." What was said by the court is so appropriate to the provisions of our own statute with reference to the exclusion of certain voters as jurors that we quote from the opinion as follows:

"The only claim made by the petitioner in connection with her application is that jury service is incidental to and a part of suffrage, and since, by the recent amendment of the state constitution, women are qualified to vote, they must be made jurors. The fallacy of this contention is found in an examination of the history of the jury system since the adoption of the first constitution in the State of New York. While citizenship has always been a qualification of jury service, every voter has not been included within the jury lists. The various laws with reference to jurors show that men who were entitled to vote have been excluded from jury service. By section 686, above mentioned, male citizens over the age of seventy and male citizens who do not own real property of one hundred and fifty dollars, or personal property of two hundred and fifty dollars, and male citizens who are infirm or decrepit, male citizens who are not intelligent, and male citizens who are not of good character, and male citizens who are not able to read and write the English language understandingly, are disqualified from jury service. Similar statutes are made applicable to other counties. These limitations include a large number of citizens who vote. Similar enactments have existed in this state for many years, clearly showing that the right to vote did not of itself carry with it the right of jury service."

The opinion further quotes from Strauder v. West Virginia, 100 U. S. 303, 25 L. Ed. 664, the following language:

"We do not say that within the limits from which it is not excluded by the amendment a state may not prescribe the qualifications of its jurors, and in so doing make discriminations. It may confine the selection to males, to freeholders, to citizens, to persons within certain ages, or to persons having educational qualifications. We do not believe the Fourteenth Amendment (Constitution U. S.) was ever intended to prohibit this. Looking at its history, it is clear it had no such purpose. Its aim was against discrimination, because of race or color."

We have reached the conclusion that we cannot with any fair construction of language say that the provisions in our constitution and laws that grand juries shall be composed of twelve men, means less than the plain words import. To hold that it also means that a grand jury may be composed partly of men and partly of women, would necessarily imply that with the same logic, or want of logic, we could also hold that it might be composed of twelve women. We are not dealing, and cannot deal with the expediency of the law, but must declare only what it is. The right or duty (whichever it may be deemed), to serve on grand juries, cannot be confounded with the right to vote, and until in the wisdom of our people a change is made in the provision of the Constitution, it is our duty to uphold it as written.

In 1875 there was considered by the Supreme Court of the United States (Minor v. Hoppersett, U. S. Sup. Ct. R., 86-89—Bk. 22 L. C.

P. 627) the question whether the right of citizenship of women also conferred the right of suffrage. After a lengthy discussion the court held that one did not necessarily involve the other, and the concluding words of Chief Justice Waite, as to withholding from women then, the right to vote is not inappropriate here incident to her non-service on juries.

"We have given this case the careful consideration its importance demands. If the law is wrong, it ought to be changed; but the power for that is not with us. The arguments addressed to us bearing upon such a view of the subject may, perhaps, be sufficient to induce those having the power to make the alteration, but they ought not to be permitted to influence our judgment in determining the present rights of the parties now litigating before us. No argument as to woman's need of suffrage can be considered. We can only act upon her rights as they exist. It is not for us to look at the hardship of withholding. Our duty is at an end if we find it is within the power of a State to withhold."

It follows that we must order a reversal of the judgment in this cause, and direct a dismissal of the prosecution under the present indictment.

*Reversed and Dismissed.*

(A number of subsequent decisions approve the above opinion, and, containing no other matter, it is not deemed necessary to report them.—REPORTER).