**GLOVER v. COBB et al.**

No. 12757.

Court of Civil Appeals of Texas. Dallas.

Dec. 17, 1938.

Rehearing Denied Jan. 21, 1939.

Sarah Daniels and Sarah Cory Menezes, both of Dallas, for appellant.

E. G. Moseley and Harold McCracken, both of Dallas, for appellees.

LOONEY, Justice.

Miss Stella Glover, a resident citizen of Dallas County, possessing the requisite legal qualifications to serve as a grand or petit juror and, believing herself eligible, requested the tax assessor and collector, the sheriff, the county clerk, and the district clerk of Dallas County (each having a duty to perform in administering the wheel system of selecting jurors, prescribed by articles 2094–2103, R.S., Vernon's Ann.Civ.St. arts. 2094–2103), to place her name in the jury wheel, also the names of all other women residents of Dallas County similarly qualified, from which to be drawn for jury service; stating that she had been informed that said officials had uniformly and customarily failed to place the names of women in the jury wheel. These officials declined to comply with the request of Miss Glover, not arbitrarily, but because they were of opinion that, under the controlling provisions of the Constitution and statutes, women were not eligible, hence not required by law to perform jury service. Thereupon, Miss Glover instituted the present suit, alleging all necessary facts to state a cause of action according to her contention; praying that, the defendants (the county officials) be required, by writ of mandamus, to place her name in the jury wheel, as well as the names of all qualified jurors of Dallas County, without discrimination against any citizen on account of sex. After a full hearing, the court denied plaintiff the relief sought, and she appealed.

The case has been thoroughly and satisfactorily briefed by both parties. In support of their several contentions, counsel for appellant (Sarah Daniels and Sarah C. Menezes) ransacked the records of the past, arraying the successive constitutional and statutory enactments relating to the two subjects discussed—that is, suffrage and the jury system—beginning with the Republic and extending through Statehood to this date.

Appellant contends that the right of suffrage, heretofore conferred upon women, necessarily carried the right to serve as jurors; that since the adoption of the 19th Amendment to the Federal Constitution, U. S.C.A., providing that the right to vote shall not be denied or abridged by the United

States or by any state on account of sex, women having been admitted to the ballot in this State, that the statute—Art. 2133 (providing that "all men over twenty-one years of age are competent jurors," etc.)— took on a new meaning and that the word "men" should now be construed to include women, under the statutory rule of construction (Art. 10), providing that the masculine gender shall include the feminine.

We cannot accept appellant's view of the subject. The 19th Amendment to the Federal Constitution, adopted in August 1920, did not confer upon women the right to vote, but simply prohibited discrimination against them on account of their sex. State v. James, 96 N.J.L. 132, 114 A. 553, 16 A.L.R. 1141; State v. Mittle, 120 S.C. 526, 113 S.E. 335 (the Supreme Court refused to review the latter case); Mittle v. State, 260 U.S. 705, also page 744, 43 S.Ct. 164, 67 L.Ed. 473. In harmony with the 19th Amendment, the people amended sec. 2 of Art. 6 of our Constitution, Vernon's Ann.St., the effect being to confer upon women the right of suffrage on an equality with men. However, we do not think it can be implied from the grant of the right of suffrage to women that thereby they became eligible and competent jurors; as the right to vote and competency for jury service are entirely different subjects, requiring different regulation. While it is true that, the right to vote in the county of one's residence is one of the qualifying prerequisites for jury service, yet it is obvious that not every qualified voter is a competent juror. Since the adoption of the 19th Amendment, the question under discussion has arisen in a number of the states, and the uniform holdings of their courts on the subject are, to the effect that, a qualified voter is not ipso facto a qualified juror. See State v. Mittle, 120 S.C. 526, 113 S.E. 335; State v. James, 96 N.J.L. 132, 114 A. 553, 16 A.L.R. 1141; State v. Kelley, 39 Idaho 668, 229 P. 659; In re Grilli, 110 Misc. 45, 179 N.Y.S. 795, 796.

However, we do not think the controlling provisions of our Constitution (adopted in 1876) and the statutes enacted thereunder, are of doubtful meaning. Sec. 13 of Art. 5, Vernon's Ann.St.Const., provides that "Grand and petit jurors in the District Courts shall be composed of twelve men," etc.; and sec. 17 of Art. 5 provides that " * * * a jury in the County Court shall consist of six men," etc. Prior to the adoption of the present Constitution, the

common law of England was adopted during the existence of the Republic, as early as 1840, thus bringing in, as a part of that system, the definition of the term "jury", which, when used without qualification, addition or prefix, meant a body of twelve men. See Capitol Traction Co. v. Hof, 174 U.S. 1, 13, 19 S.Ct. 580, 43 L.Ed. 873; 35 C.J. page 140, sec. 1; the same, page 144, sec. 10; 26 Tex.Jur. page 566, sec. 3.

Throughout the constitutional and statutory history of the subject, the people in their legislative capacity, and the Legislature in its representative capacity, without break in continuity, repeatedly announced that men only were eligible for jury service. So, in view of this background, we think the conclusion inescapable that, the quoted provisions of our present Constitution, and of the acts of the Legislature passed in pursuance thereof (Arts. 2133–2135) mean that only men are eligible to serve the courts as jurors; and the Legislature, being authorized by Sec. 19 of Art. 16 of the Constitution, Vernon's Ann.St., to prescribe the qualification of grand and petit jurors, performed that duty, as evidenced by Arts. 2133, 2134 and 2135, R.S.

A cardinal rule, in dealing with constitutions, is that they should receive a consistent and uniform interpretation, so as not to be given one meaning at one time and another meaning at another time, even though circumstances may have so changed as to render a different interpretation desirable. Constitutions do not change meaning in response to the varying tides of public opinion; the will of the people, as recorded in their constitution, must remain inflexible until changed by them, hence the courts should never so yield to public sentiment, as to construe a constitutional provision contrary to the will of the founders. 11 Amer.Jur. page 659, sec. 50, and authorities cited in notes 18 and 19.

That the state had the undoubted right to exclude women from jury service and place the burden of that public duty exclusively upon men, cannot be successfully questioned. Minor v. Heppersett, 21 Wall. 162, 88 U.S. 162, 22 L.Ed. 627; Strauder v. West Virginia, 100 U.S. 303, 310, 25 L.Ed. 664. In the latter case, the court considering the right of a state, in view of the provisions of the 14th Amendment, U.S.C.A. Const., to discriminate in prescribing qualifications of jurors, said that a state "may confine the selection to males, to freeholders, to citizens, to persons within certain

ages, or to persons having educational qualifications. We do not believe the Fourteenth Amendment was ever intended to prohibit this. Looking at its history, it is clear it had no such purpose. Its aim was against discrimination because of race or color. As we have said more than once, its design was to protect an emancipated race and to strike down all possible legal discriminations against those who belong to it. To quote further from [Slaughter-House Cases] 16 Wall. [36, 21 L.Ed. 394] supra: 'In giving construction to any of these articles (amendments), it is necessary to keep the main purpose steadily in view.' 'It is so clearly a provision for that race and that emergency, that a strong case would be necessary for its application to any other.' * * *" [page 310.]

However, we are of opinion that, the ineligibility of women to serve as jurors has heretofore been adjudicated against appellant's contention. Every argument advanced by counsel in support of the appeal was urged in Harper v. State, 90 Tex.Cr.R. 252, 234 S.W. 909 and denied by the Court of Criminal Appeals in an able opinion by Judge Hawkins. In that case, the eligibility of women to serve as grand jurors was under consideration, necessarily involving a construction of the same provision of the Constitution now under consideration. The court held that women were ineligible to serve on the grand jury, and that an indictment found by a jury of twelve, two of whom were women, was absolutely void. To the same effect see: Stroud v. State, 90 Tex.Cr.R. 286, 235 S.W. 214; Riddle v. State, 90 Tex.Cr.R. 548, 236 S.W. 725; also Tremont v. State, 96 Tex.Cr.R. 572, 259 S. W. 583, 584.

 But, if it be conceded that women are eligible, and that those possessing statutory qualifications may be drawn and summoned for jury service, does that status confer upon them a justiciable right? We do not think so. The designation of certain persons as competent jurors, and requiring them to serve as such, does not, in our opinion, create a right at all, but simply imposes a public duty. While the Constitution guarantees the right of trial by jury (sec. 15, Art. 1, Vernon's Ann.St.Const.), there is no guaranty of a right in any person to be called to serve on the jury; in truth, it is possible, even probable, in the administration of the statute governing the selection of jurors in the more populous counties of the State, that persons eligible and competent for jury service may never be drawn or summoned to perform that duty.

Miss Glover asserts no interest, financial or otherwise, peculiar to herself; her interest is the same as that of the general public in the enforcement of law, or at least that part of the public consisting of women who, if eligible, are competent for jury service. So, we conclude that, neither in her individual nor representative capacity does Miss Glover assert a justiciable right; therefore, cannot maintain this action.

But, if it can be correctly said that, the public officials are arbitrarily refusing to administer the law fairly and uniformly, such an abuse is not without remedy—as the State, in its capacity as parens patria, has a justiciable interest in seeing to it that, its agencies, set up to discharge public functions, perform their duties in the manner prescribed by law, hence appropriate proceedings to compel obedience may be instituted on behalf of the State, by or under the authority of its Attorney General.

The doctrine just announced is sustained by the following authorities: City of San Antonio v. Strumberg, 70 Tex. 366, 7 S.W. 754; Staples v. State ex rel. King, 112 Tex. 61, 245 S.W. 639; Yett v. Cook, 115 Tex. 205, 216, 222, 281 S.W. 837.

So, in view of the foregoing, we are of opinion that the court below did not err, therefore its judgment is affirmed.

Affirmed.