DEVIN, J., dissenting.
SEAWELL, J., dissenting.
Criminal prosecution tried upon indictment charging the defendants and another, in six counts, with violations of the prohibition laws.
Upon the trial, after the regular panel of jurors and most of the male bystanders had been exhausted, the sheriff called from among the bystanders two women of good moral character, freeholders and residents of the county, and they were accepted by the solicitor as satisfactory jurors. The defendants moved the court to excuse both women from jury service for the reason that they were not qualified, because of their sex, to serve as petit jurors. Overruled; exceptions. Peremptory challenges were still available to the defendants, but were not used to stand the women aside, as the defendants did not wish unnecessarily to exhaust their challenges. Practically all remaining bystanders, not previously called, were women.
There was a general verdict of guilty as to each of the defendants, which they moved to set aside principally upon the ground of jury defect. Overruled; exceptions.
From the judgments pronounced, the defendants appeal, assigning errors. *Page 583 
The questions here posed are (1) whether a jury of ten men and two women suffices as a jury of "good and lawful men" within the meaning of Art. I, sec. 13, of the Constitution; and (2) whether trial by such jury complies with "the law of the land" and accords with "the ancient mode of trial by jury" vouchsafed in Art. I, secs. 17 and 19, of the Constitution. While these are questions of first impression, the construction heretofore placed on the subject sections of the Constitution would seem to point to negative answers.
The pertinent clauses follow:
"No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court." Declaration of Rights, Art. I, sec. 13.
"No person ought to be . . . deprived of his . . . liberty or property, but by the law of the land." Declaration of Rights, Art. I, sec. 17.
"In all controversies at law respecting property, the ancient mode of trial by jury . . . ought to remain sacred and inviolable." Declaration of Rights, Art. I, sec. 19.
The will of the people as expressed in the Constitution is the supreme law of the land. Warrenton v. Warren County, 215 N.C. 342,2 S.E.2d 463. In searching for this will or intent all cognate provisions are to be brought into view in their entirety and so interpreted as to effectuate the manifest purposes of the instrument.Elliott v. Board of Equalization, 203 N.C. 749, 166 S.E. 918; Readev. Durham, 173 N.C. 668, 92 S.E. 712. The best way to ascertain the meaning of a word or sentence in the Constitution is to read it contextually and to compare it with other words and sentences with which it stands connected. Noscitur a sociis is a rule of construction applicable to all written instruments. 11 Am. Jur., 663; 25 R. C. L., 995.
In numerous decisions, it has been said that the word "jury," as here used, is to be given the signification which it had when the Constitution was adopted, i.e., a body of twelve men in a court of justice duly selected and impaneled in the case to be tried. S. v. Rogers, 162 N.C. 656,78 S.E. 293, 46 L.R.A. (N.S.), 38, Ann. Cas. 1914 A, 867; S. v. Berry,190 N.C. 363, 130 S.E. 12; S. v. Scruggs, 115 N.C. 805, 20 S.E. 720; S.v. Stewart, 89 N.C. 564; People v. Powell, 87 Cal. 348; 31 Am. Jur., 557; 11 Am. Jur., 684. The jury is to be composed of twelve "good (or free) and lawful men" — liberi et legales homines. S. v. Dalton, 206 N.C. 507,174 S.E. 422. *Page 584 
From ancient times or from the earliest period in the history of the common law, grand and petit juries have consisted exclusively of men. 3 Bl. Com., 352. Women were excluded propter defectum sexus. 3 Bl. Com., 362; 4 Id., 395. Blackstone says: "Under the word `homo,' also, though a name common to both sexes, the female is, however, excluded propter defectumsexus (because not of the male sex)," except in cases of writs de ventreinspiciendo. 3 Blk. Com., 362, 35 C. J., 245; People v. Lensen,34 Cal.App. 336, 167 P. 406; S. v. James, 96 N.J. L., 132, 114 A. 553, 16 A.L.R., 1141; S. v. Mittle, 120 S.C. 526, 113 S.E. 335. Such was the general understanding and meaning of the word "jury" at the time of the adoption of the Constitution in 1868. S. v. Dalton, supra; S. v. Rogers,supra. So much so that in Art. I, sec. 13, it is spelled out as "a jury of good and lawful men." True, the number is not mentioned, yet it would hardly be doubted that what the framers had in mind was "a jury of twelve good and lawful men." And the cases so hold. 31 Am. Jur., 625.
At common law a person under 21 years of age was not competent to serve as a juror, and so we have held that the presence of a minor on a grand jury renders its returns quashable, and this without any statute by our Assembly prescribing the age for jurors. S. v. Griffice, 74 N.C. 316. Likewise, under the common law an alien was not qualified to serve as a juror, and so we have held, quite recently, that a jury composed of eleven citizens and one alien was not a lawful jury, and this without any statute making alienage a disqualification for jury service in this State. Hintonv. Hinton, 196 N.C. 341, 145 S.E. 615.
It follows, therefore, that until the common-law disqualification of sex is removed from our law, women are not required to assume the obligation of jury service. They were ineligible for such service at the time of the adoption of the Constitution in 1868, and the same law which then obtained still subsists. 31 Am. Jur., 594.
"It is elementary that a jury, as understood at common law and as used in our Constitutions, Federal and State, signifies twelve men duly impaneled in the case to be tried." S. v. Rogers, supra; Traction Co. v.Hof, 174 U.S. 91; Patton v. United States, 281 U.S. 276,74 L.Ed., 854, 70 A.L.R., 263.
It is a cardinal principle, in the interpretation of constitutions, that they should receive a consistent and uniform construction, so as not to be given one meaning at one time and another meaning at another time, even though circumstances may have so changed as to render a different construction desirable. The will of the people as expressed in the organic law is subject to change only in the manner prescribed by them. S. v.Knight, 169 N.C. 333, 85 S.E. 418; 11 Am. Jur., 659. *Page 585 
In support of a different view, it is suggested that by statute, even prior to the adoption of the Constitution, the original jury list was to be selected from the names of all such "persons" as have paid the taxes assessed against them for the preceding year and are of good moral character and of sufficient intelligence. G.S., 9-1. And further that in the construction of statutes, "every word importing the masculine gender only shall extend and be applied to females as well as to males, unless the context clearly shows to the contrary." G.S., 12-3.
Without conceding the present pertinency of these statutory provisions, it would seem that the contextual use of the words "good and lawful men" and "the ancient mode of trial by jury" in the above sections of the Constitution clearly shows a contrary intent. Re Opinion of Justices,237 Mass. 591, 130 N.E. 685. In at least three states, California, Massachusetts and Taxes, similar arguments have been considered and rejected. People v. Lensen, supra; Com. v. Welosky, 276 Mass. 398,177 N.E. 656; Glover v. Cobb, 123 S.W.2d 794.
To say that the law-making body in 1855, thirteen years prior to the adoption of the Constitution, intended to impose, and did impose, upon women the obligation of jury duty, which the framers of the Constitution must have had in mind, and which we are just now finding out — 89 years later — may reveal some ingenuity or enterprise, but the idea could hardly be expected to prevail. In addition to the lateness of the discovery, which alone invites scrutiny, it seems to involve a novel use of the rules of construction.
Every statute is to be considered in the light of the Constitution and with a view to its intent. Belk Bros. Co. v. Maxwell, 215 N.C. 10,200 S.E. 915, 122 A.L.R., 687; S. v. Humphries, 210 N.C. 406,186 S.E. 473. "The intention of the law-makers is the law. This intention is to be gathered from the necessity or reason of the enactment and the meaning of the words, enlarged or restricted according to their real intent. In constructing a statute the courts are not confined to the literal meaning of the words. A thing within the intention is regarded within the statute though not within the letter. A thing within the letter is not within the statute if not also within the intention." Uphoff v. Industrial Board, 271 Ill. 312,111 N.E. 128, L.R.A., 1916 E, 329, Ann. Cas., 1917 D, 1. To like effect is the opinion in Kearney v. Vann, 154 N.C. 311, 70 S.E. 747. All agree that a statute is to be interpreted as it was intended to be understood at the time of its enactment, and usually with reference to the common law then existent. 50 Am. Jur., 224.
The pertinent considerations were before the Court in S. v. Mitchell,202 N.C. 439, 163 S.E. 581, where Adams, J., delivering the opinion, *Page 586 
said: "Before the adoption of our Constitution it was declared that all such parts of the common law as were theretofore in use within the State and were not destructive of, repugnant to, or inconsistent with the freedom and independence of the State and its form of government and not otherwise provided for, abrogated, repealed, or become obsolete, were in full force within the State. This statute is now in effect. C. S., 970. It is generally conceded that so much of the common law as is in force by virtue of this provision is subject to legislative control and may therefore be modified or repealed. But there are parts of the common law which are not subject to modification or repeal by the Legislature because they are imbedded in the Constitution. . . . It is held, also, that as a rule statutes are to be construed with reference to the common law in existence at the time of their enactment. Kearney v. Vann, 154 N.C. 311."
It is contended, however, that since 1868 the public policy of the State has undergone a change in respect of the rights of women, which should carry with it an elimination of the disqualification for jury servicepropter defectum sexus. Patton v. United States, supra. The position is that women are now politically the peers of men, and hence they should be permitted to serve on juries. S. v. Chase, 106 Or. 263, 211 P. 920. But jury service is not a right or privilege guaranteed to anyone. S. v.Walker, 192 Iowa 823, 185 N.W. 619; 35 C. J., 245. It is an obligation imposed by law upon those who come within a designated class possessing the prescribed qualifications. 31 Am. Jur., 650. Women have not yet been assigned the duty of serving on grand or petit juries in this jurisdiction.
The General Assembly is at liberty to impose the burden of jury service on some and relieve others of the obligation, provided the classification is not in derogation of the 14th Amendment to the Constitution of the United States or of our own Constitution. Norris v. Alabama, 294 U.S. 587,79 L.Ed., 1074; S. v. Peoples, 131 N.C. 784, 42 S.E. 814. Of course, to single out the members of one race for jury duty and exclude those equally qualified of another would be an unwarranted discrimination of which members of the excluded race could rightfully complain when called upon to answer or go to trial on an indictment in the courts. Carter v.Texas, 177 U.S. 442, 44 L.Ed., 839; Neal v. Delaware, 103 U.S. 370,26 L.Ed., 567; Strauder v. W. Va., 100 U.S. 303, 25 L.Ed., 664; S. v.Henderson, 216 N.C. 99, 3 S.E.2d 357. But classification on the basis of sex, applicable alike to all races, is after the manner of the common law and has persisted throughout the history of the State. S. v.Sims, 213 N.C. 590, 197 S.E. 176; 35 C. J., 245. *Page 587 
Moreover, the suggested interpretation of the statute, if constitutionally permissible, would require the commissioners of the several counties as well as the Federal authorities to place the names of all women, otherwise qualified, upon the jury list for jury service, both State and Federal. See United States v. Roemig, 52 F. Supp. 857, and cases there cited; Anno. 82 L.Ed., 1058; 31 Am. Jur., 620; 35 C. J., 259. This would lead to quite an innovation in the practical administration of the law which has heretofore prevailed from time immemorial. Long acquiescence in the practical interpretation of a statute is entitled to great weight in arriving at its meaning. It is not thought the real intent of the enactment could have been so generally misunderstood or overlooked for years on end. Then, too, if some of the jurors may be women, all may be women. Harper v. State, 90 Tex.Crim. 252, 234 S.W. 909. A jury of women, or a jury of men and women, could hardly have been in mind when the only jury known at the time was a jury of "good and lawful men" —liberos et legales homines juratos. Taylor's Law Glossary; 11 Am. Jur., 683. In Whitehurst v. Davis, 3 N.C. 113, where a caveat was tried by thirteen jurors, the Court observed: "It may be said, if thirteen concur in a verdict, twelve must necessarily have given their assent. But any innovation amounting in the least degree to a departure from the ancient mode may cause a departure in other instances, and in the end endanger or prevent this excellent institution from its usual course. Therefore, no such innovation should be permitted." It were better that the controlling voice should speak again before adopting an interpretation which would impose the obligation of jury service on all women, otherwise qualified, under the provisions of this ancient statute. Obviously, we should think, some exemptions would want to be provided, and other changes made. Anno.82 L.Ed., 1058.
It is also suggested that the 19th Amendment to the Constitution of the United States, adopted in 1920, may have some bearing upon the question. The effect of this amendment was to eliminate any discrimination in the right of citizens to vote on account of sex. Consequently, the franchise has been extended to both sexes equally in this State. Ch. 18, P. L. Ex. Ses. 1920. With us, however, liability to jury duty is not an incident to the right of suffrage, as in some of the States. S. v. Walker, supra;People v. Barltz, 212 Mich. 580, 180 N.W. 423, 12 A.L.R., 520; Parusv. District Court, 42 Nev. 229, 174 P. 706, 4 A.L.R., 140; Com. v.Maxwell, 271 Pa., 378, 114 A. 825; Anno. 71 A.L.R., 1336; 31 Am. Jur., 653. It is a far cry from elector to juror. The qualifications of the one are quite different from those of the other. While they may have some requirements in common, they are not correlative *Page 588 
or necessarily coexistent or coextensive. 35 C. J., 245. The right to vote and the eligibility for jury service are different subjects, requiring different regulations. Glover v. Cobb, supra. One may be a qualified elector and yet not a qualified juror, and vice versa. The election laws are inapplicable to the subject of jury duty. People v. Barnett,319 Ill. 403, 150 N.E. 290; United States v. Roemig, supra.
Our attention has been called to the many cognate decisions in other states. They reflect a variety of views, depending in each case on the Constitution and laws of the state. "In some states jury duty on the part of women is made compulsory, in others it is optional, and in others women are expressly made ineligible." 35 C. J., 245. We have found no case, however, in a state with constitutional and statutory provisions similar to ours, where a contrary conclusion has been reached. As pointed out in some of the cases, if the law has been changed, the time and manner of its change ought to be discoverable. We have been unable to find any modification of the common law, here prevailing, as it pertains to the specific matter under review. hence, it is to be regarded as in full force and effect. G.S., 4-1; S. v. Mitchell, 202 N.C. 439, 163 S.E. 581. The same thought has been expressed in the States of California, South Carolina and Texas. People v. Lensen, supra; S. v. Mittle, supra; Glover v. Cobb,supra.
As a dernier resort, the point is made that a contrary legislative intent may be extracted from ch. 30, Public Laws 1921. This act deals only with titles or designations, and not with the qualifications for the offices and positions mentioned therein. To declare, as the statute does, that the words "governor," "senator," "solicitor," "elector," "executor," "administrator," "collector," "juror," "auditor," and others of like character, "shall when applied to the holder of such office, or occupant of such position, be words of common gender and that they shall be a sufficient designation of the person holding such office or position, whether the holder be a man or woman," is not to say that male and female alike shall be eligible to hold such office or position with no regard to the prescribed qualifications therefor. To impute such a purpose to the act would result in eliminating all qualifications for such offices or positions, save that of "man" or "woman." The proposed construction imports a meaning which the statute does not disclose.
Whether we consider the law outmoded, regard it archaic, or think it should be changed, is neither controlling nor important in its determination. It is ours to declare the law as we find it, and no more. "It is ours to construe the laws and not to make them" — Hoke, J., inS. v. Barksdale, 181 N.C. 621, 107 S.E. 505. The law as written is not to be altered or amended by interpretation. Freight Discrimination Cases,95 N.C. 434. *Page 589 
Mr. McIntosh, in his valuable work on North Carolina Practice and Procedure, states the whole case in a single sentence: "Women are not recognized in this State as subject to, or entitled to, serve on juries, and whether they could be so recognized by statute without a change in the Constitution has not been decided." N.C. Practice and Procedure, 592.
The question is not whether women are competent to serve on juries, but whether they are presently eligible to do so. They may be ever so competent, and yet not eligible. Eligibility is prescribed by law. Competency is another matter. The right to vote, or to hold office, is not the test of jury qualification. The judge on the bench may not be eligible to serve as a juror, and generally he is not. It is no impeachment of citizenship to be disqualified for jury service, or to fall outside the class designated for such service.
In considering the broader implications of the case, it may be well to remember that the defendants are on trial, and not the women of the State. Our concern is with the right of the defendants to be tried by a jury of "good and lawful men" as the law provides. This is the crux of the matter. In Hinton v. Hinton, supra, Brogden, J., delivering the opinion of the Court, observed: "It is clear, therefore, that the law not only guarantees the right of trial by jury, but also the right of trial by a proper jury; that is to say, a jury possessing the qualifications contemplated by law." And in S. v. Griffice, supra, Bynum, J., speaking to an indictment by an exceptionable grand jury, put it this way: "The defendant must have the right to have the accusation against him performed by men unexceptionable in respect of qualification."
Finally, the view is advanced that the exceptions should be overruled as harmless since the defendants failed to use all of their peremptory challenges. S. v. Dixon, 215 N.C. 438, 2 S.E.2d 371; S. v. Levy,187 N.C. 581, 122 S.E. 386; S. v. Upton, 170 N.C. 769, 87 S.E. 328; S.v. English, 164 N.C. 497, 80 S.E. 72; S. v. Lipscomb, 134 N.C. 689,47 S.E. 44; S. v. Lambert, 93 N.C. 618. In reply, the defendants say (1) that they are not required to exhaust their peremptory challenges except in cases of generally qualified jurors; (2) that the principle of waiver is inapplicable to the facts of the instant record as they were compelled, over objection, to choose between the women jurors in the box and other prospective women jurors; and (3) that in no event should a rule of practice prevail over a constitutional provision, or form over substance. S. v. Camby, 209 N.C. 50, 182 S.E. 715; S. v. Hill, 209 N.C. 53,182 S.E. 716; S. v. Pulliam, 184 N.C. 681, 114 S.E. 394. The rationale of the pertinent decisions would seem to support the defendants' view in respect of the sufficiency of the exceptions. Hinton v. Hinton,supra; Harper v. State, supra.
Venire de novo. *Page 590