# MAY, 1925.

## GEORGE W. MCNEAL v. THE STATE.

No. 9021.   Delivered May 20, 1925.

**1.—Rape—Unfair Jury—When Established—New Trial Granted.**

Where on a trial for rape, resulting in a conviction with the death penalty assessed, appellant established on hearing of his motion for a new trial, that one of the jurors who on his voir dire examination denied that he had formed or expressed any opinion as to appellant's guilt, had in fact a few days prior to the trial stated that he already knew enough that if he was on the jury he would hang appellant, a new trial should have been granted.

**2.—Same—Indictment—Motion to Quash—Properly Overruled.**

Where a motion was presented to quash the indictment on the ground that one or more members of the jury commission which drew the grand jury were interested in civil suits pending in the courts of Jefferson County, such motion was properly overruled. Following Whittle v. State, 43 Tex. Crim. Rep. 468.

3.—Same—Jury—How Drawn—Refilling Jury Wheel.

Where it was discovered in Jefferson County in February 1924, that the jury wheel in said county was not properly filled in accordance with Chap. 5, Title 75 of Vernon's complete Texas Statutes, in August 1923 to be used in the year 1924, and the court thereupon ordered such list destroyed, and the wheel properly refilled with a new list, the procedure was proper, and it was so held in the case of Knott v. State, opinion by this court delivered February 11, 1925.

Appeal from the District Court of Jefferson County. Tried below before the Hon. Geo. C. O'Brien, Judge.

Appeal from a conviction for rape; penalty assessed at death.

The opinion states the case.

*Kelly & Kelly,* of Lawrenceville Ga.; *Howth, Adams & Hart; David E. O'Fiel,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction in district court of Jefferson County for rape; punishment fixed at death.

Appellant was convicted of statutory rape, the injured female being a girl about eleven years of age. According to the State's case she was playing with two little boys and the three were invited by appellant to go riding with him in an automobile. The party went into the suburbs and the boys were given money and told to go to a drug store. The girl testifies that appellant then drove her out to a vacant lot, it being in the night time, and that he there had intercourse with her upon the ground, and later she says they got back in the car he repeated the act.

There are a great many bills of exception which do not seem to present any error. All of them have been examined by us and a review of them would be no benefit to anyone concerned.

One of the main requisites of a fair and impartial trial is that the jury be composed of men who have not committed themselves to any such prejudgment of the case as creates serious doubt concerning their ability to weight and impartially decide the issues therein. In this case one Cahal was a juror. In his motion for new trial appellant sets up that Cahal had formed and expressed an opinion adverse to the case before being taken as a juror and that he concealed this fact during his examination. One Brent made an affidavit, which was attached to said motion, that in an argument concerning this case a short time before trial some one asserted that the parties prosecuting it were pretty rough characters, and that juror Cahal was present and spoke up and said:

"Oh, you know better than that. That I already know enough, that if I was on the jury I would hang him (meaning the said McNeal); that if the jury which tried him did not hang him that I could go with others afterwards and help hang him."

The State traversed said motion and attached a controverting affidavit made by Cahal who therein denied making the above statement, but admitted that on the occasion referred to he did say, "If he is guilty he ought to be hanged, and I would depend largely on the little girl's testimony and that of the doctor." The makers of both affidavits appeared on the hearing of the motion and reaffirmed their statements, Cahal, however, admitting that on his voir dire he was asked if he had an opinion and replied that he had none. Cross-examined he said he did not remember using the language attributed to him by Brent as above quoted, but refused to positively deny making it, and in one place says that possibly he may have said it. We are confronted with the situation of a juror who has denied on his voir dire that he has any opinion about the case, who is later attacked by a man whose veracity is not questioned, who swears that he heard the juror say a few days before the trial that he knew enough that McNeal ought to be hanged and if the jury which tries him does not hang him, that he would go with others and do it. We have this assertion in a sense supported by the refusal of the juror to deny that he made it. We have the fact that the party in this unenviable position is taken as a juror and votes for the death penalty, and that the jury, which stood on the first ballot, upon the question of penalty, six for death and six for imprisonment, all finally came to the death penalty. We are inclined to think under all the authorities that this would call for the granting of a new trial. However we have here the further fact that the impugned juror at best says he does not remember making the statement but possibly he might, and saying that they were engaged in "an unguarded conversation at the time." In addition we are compelled to state that we are not at all satisfied but that on what the juror admits outright that he did say, the accused should have been granted another trial. Adverting for a moment to the admitted statement, we notice that in substance he says that in determining McNeal's guilt he would depend chiefly on the girl and the doctor, and that if he believed appellant guilty, then he should be hung. Can a man get a fair and impartial trial at the hands of a jury the members of which say in advance that they expect to form their conclusion from the testimony of only a part of the State's witnesses,—and if from same they conclude him guilty they will assess the extreme penalty? The penalty in most felony cases is graduated from a minimum to a maximum term of years. Would it be contended in any case that if every talesman summoned admitted on his voir dire

that he had discussed the case and had his mind made up to inflict . the maximum penalty if convinced of guilt by the testimony of two witnesses named, that a jury composed of men so committed could give the accused a fair trial according to the law and evidence? We think not. It follows that in any event we are of opinion that a new trial should have been granted to appellant because he was denied trial before a fair and impartial jury.

Appellant moved to quash the indictment on the ground that one or more members of the jury commission which drew the grand jury were interested in civil suits pending in the courts of Jefferson County. This contention is without merit. Whittle v. State, 43 Texas Crim. Rep. 468. The further issue raised that the jury commission were not furnished with the tax list, is not sustained by the facts. They were furnished with such list and when in doubt as to the qualification of any proposed grand-juror, consulted said list to verify their proposed action. Each of the matters set up in the motion has been carefully considered and we do not agree with any of the points raised.

The motion to quash the special venire is lengthy and a recital of same would be of no value. Briefly, it appears that in accordance with the provisions of Chap. 5, Title 75, Vernon's Complete Texas Statutes 1920, that the jury wheel for use in Jefferson County, Texas, between the 1st and 15th of August 1923, was filled from the list of qualified jurors of said county as shown by the tax lists in the tax assessor's office for the current year; said jury wheel being so filled for use in obtaining jurors for the various courts of said county during the year 1924 in accord with the provisions of Art. 5151 of said Chapter. Thereafter, in Atwood v. State, 257 S. W. Rep. 563, opinion January 2, 1924, this court held that if in filling a jury wheel the names of qualified jurors had been intentionally and purposely excluded, that said jury wheel would be illegally filled, and a jury obtained therefrom would be subject to attack. It being true and so ascertained by the trial court that the same conditions obtained in the filling of the Jefferson County wheel, as in the wheel discussed and condemned in said Atwood case, as soon as knowledge of the rendition of the opinion in said case reached the learned trial judge in this case, as disclosed by the record, he made his order reciting the facts and directing that the jury wheel be empied and again filled in accordance with the statute as interpreted in said opinion. A new and larger wheel was filled in February 1924 by those parties directed so to do by statute, and the wheel being filled at this time from the names of all the qualified jurors as shown by the tax lists used in filling the wheel in August 1923, and from the wheel thus filled the instant venire was drawn. In our opinion this was proper practice. While the jury wheel and its contents were not literally

lost or destroyed, as referred to in Art. 5158 of said Chapter, their use and efficacy for the purpose intended and necessary, was lost and destroyed as held by us in the Knott case, recently decided and it became the duty of the court below, as nearly as possible in conformity with the statutory direction, to provide for jurors to try jury cases on the dockets of Jefferson County for 1924. If we comprehend the language of Art. 5151, supra, in its reference to the filling of the jury wheel "From the list of qualified jurors of such county as shown by the tax lists in the tax assessor's office for the current year," this means that a complete list of such persons must be had and used, and it being shown by the testimony herein that in Jefferson County the tax list for 1923 was not completed until October of said year, so that those charged with duty of filling said wheel in August could not avail themselves of the incomplete tax list for that year, they were compelled to and did use the tax list for 1922. It is further shown that in an effort apparently to fill said wheel in February 1924, (from which the instant jury was drawn) in form and manner as nearly as was done at the statutory time in August 1923, that the names of all qualified jurors shown on the tax list for 1922 were again used. This also we believe to be proper under the facts. The action of the court in filling the wheel in February 1924 was intended to provide jurors for that year in substitution for those in the wheel as filled in August preceding. To have drawn the names of the proposed jurors from a different list than that used in filling the jury wheel in August before, would have furnished ground for complaint, and would have appeared a departure from a fair effort to use the names on the tax list, of the whole body of jurors which should have been placed in the wheel in August 1923. The same holding is in No. 8975, Knott v. State, opinion February 11, 1925. There are no other questions raised in the motion to quash the venire which we deem necessary to discuss. The chief complaint was of the fact that the jurors were taken from a wheel filled in February and not from a wheel filled in August, as directed in the statute.

Appellant insists that under the law of election the State should have been required to decide which of the two acts testified to by the prosecuting witness, should have been relied upon for submission to the jury. The learned trial judge declined to elect. We have been given much concern over this proposition, but inasmuch as the case must be reversed, if same is tried again we suggest that the court in his charge to the jury submit one or the other of the transactions testified to by the girl, provided her testimony is the same upon another trial. The State can suffer no evil results as the testimony is equally as strong in support of a conviction for one act as the other and such course on the part of the trial judge would obviate the raising of the same question upon another trial.

For the reasons mentioned, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*