NORTHERN TEXAS TRACTION COMPANY V. BETTIE BRYAN.

No. 4725.   Decided May 4, 1927.

(294 S. W., 527).

**1.—Jury Wheel Law—Selection of Qualified Jurors—Use of Assessors' Tax Lists.**

The general purpose of the "Jury Wheel Law," Rev. Stats., 1925, Arts. 2094, 2095, was to substitute a procedure for securing jury panels by mechanical means, in place of selection by the exercise of choice by jury commissioners, in counties to which the articles applied. It disclosed no purpose to alter the qualifications for jury service as fixed by existing law (Rev. Stats., Arts. 2133 *et seq.*) or exclude anyone so qualified from the jury lists. Being required (Art. 2095) to place on the lists all "known to be qualified jurors," the requirement that they use in doing so the tax assessors' tax lists was merely as an aid to their duty to place on the list all qualified jurors, however known to be such; and the fact that in making their list they used the list of poll tax payers from the tax collector's office instead of the assessor's list did not render erroneous the refusal of a motion of a litigant to quash, for that reason, the jury panel drawn from the wheel for the week of the trial, nor to quash such list when tendered to him at the trial, nor to overrule his peremptory challenge to each of such jurors on the same ground. (Pp. 484-488).

**2.—Statutory Construction—Constitutionality.**

A permissible construction of the language of a statute which would render it clearly constitutional and valid is preferred to one under which it would be of doubtful constitutionality. ` (P. 488).

Questions certified from the Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

*Capps, Cantey, Hanger & Short, Alfred McKnight,* and *W. D. Smith,* for appellant.

Since the testimony showed that the jury wheel of Tarrant County had been filled by the officers designated by Art. 2094 of the Revised Statutes of Texas for 1925 to select the names for the wheel, by using the names from the poll list of the tax collector's office instead of the list from the tax assessor's office, the court erred in refusing to sustain defendant's motion to quash, set aside and discharge, jointly and severally the jurors summoned in this case, including those jurors whose names appeared on the jury list herein, and those constituting the general jury panel for the week of September 21, 1925.

Rev. Stats., Arts 2094, 2095, 2133; Atwood v. State, 257 S. W., 563; Herrera v. State, 180 S. W., 1097; Knott v. State, 274 S. W., 978; McNeal v. State, 274 S. W., 981; Vasquez v. State, 172 S. W., 255; Williams v. State, 256 S. W., 601.

On general rules of statutory construction: Rev. Stats., Art. 10; Turner v. Cross & Eddy, 83 Texas, 218; F. & M. Natl. Bank v. Hanks, 104 Texas, 320; Gilmore v. Waples, 108 Texas, 167; 25 R. C. L., 957; Etter v. Mo. Pac. Ry. Co., 2 App. C. C. (Willson) Sec. 58; Larkin v. Pruett Lumb. Co., 209 S. W., 443; Western Indemnity Co. v. Milam, 230 S. W., 825; Simmons v. Arnim, 220 S. W., 66; Shipley v. Floydada Ind. Sch. Dist., 250 S. W., 159.

*Jones, Buck & Jones,* for appellee.

That part of Art. 2094, Rev. Civ. Stats. of 1925, which deals with the list from which the jurors' names are to be taken is merely directory and in no wise qualifies the broader provision of Art. 2133, Rev. Civ. Stats. of 1925, which sets out the fundamental qualifications required of a juror. Rev. Stats., 1925, Title 62; General Laws, 1907, p. 269; Williams v. State, 256 S. W., 601; People v. Searcy, 41 L. R. A., 157; 35 Corpus Juris, 268; Coker v. State, 7 Texas App., 83; Washington v. State, 103 S. W., 879; 24 Cyc. Law & Procedure; 16 R. C. L., 234; Washington v. Barnes, L. R. A. (N. S.), 932; Vasquez v. State, 172 S. W., 225.

The appellee calls the attention of the court to the fact that the tax assessor's rolls not being completed at the time that the jury wheel for Tarrant County was filled in August, 1925,

the only proper method which the designated officers could pursue and act within the decisions on the jury wheel law was to use the poll tax lists in an effort to intentionally select qualified jurors.

Mr. Presiding Judge HARVEY delivered the opinion of the Commission of Appeals, Section A.

This case is before us on questions certified from the Court of Civil Appeals for the Second Supreme Judicial District. So far as necessary to be set out here, the certificate from said court reads as follows:

"This suit was instituted by the appellee, Betty Bryan, against the appellant, Northern Texas Traction Company, to recover damages for injuries alleged by her to have been received on the 26th of December, 1923, at the corner of Sixth and Main Streets in the City of Fort Worth. She was crossing or attempting to cross Main Street on the occasion in question when she was struck by one of the street cars of the appellant, Northern Texas Traction Company. She alleges the operator of the street car was guilty of negligence in several respects proximately causing her injuries. The defendant pleaded a general denial and contributory negligence. A trial was had before a jury in the Ninety-sixth District Court which resulted in a verdict and judgment of the court below in favor of Betty Bryan and against the Northern Texas Traction Company for $20,500.00, from which judgment this appeal has been prosecuted.

"The case was reached for trial on the 22nd of September, 1925, in the Ninety-sixth District Court of Tarrant County, Texas, (the suit having been regularly set for trial for that date in the court referred to) and before announcement of ready the appellant, Northern Texas Traction Company, presented a motion to the court asking that the jury panel drawn for the week of September 21st be quashed. The motion in substance alleged that Tarrant County came under the provisions of the jury wheel law found in Arts. 2094 and 2095 of the Rev. Civ. Stats. of Texas, and that the officers designated by the so-called jury wheel law met between the 1st and 15th of August, 1925, for the purpose of filling the jury wheel from which juries to try cases in the district and county courts of Tarrant County for the ensuing year would be selected, and that instead of filling the wheel from the tax lists in the tax assessor's office for the current year, as provided in Art. 2094, the officers referred to filled the wheel from a list of all tax payers secured from the

tax collector of Tarrant County (such lists containing the names of all those who had paid taxes of every description, including poll taxes, for the year 1924) and that the present jury panel consisted of a jury drawn from the jury wheel filled in this manner. It was also alleged that the jury wheel having been filled in the manner hereinbefore set out contained several thousand more names than those shown on the tax lists in the tax assessor's office for the current year of 1925.

"The jury panel for the week beginning Monday, September 21, 1925, was drawn from the jury wheel after it was filled between the 1st and 15th of August, 1925, and some two or three weeks before the 21st of September of the same year. The jurors so drawn were notified to appear in the Forty-eighth District Court of Tarrant County, Texas, presided over by Judge Bruce Young, on Monday morning, September 21st, for service in all the courts of Tarrant County for the week beginning on September 21st. The jurors so summoned for the week of September 21st were impanelled and sworn in by Judge Young on the morning of September 21st for service in all the courts in Tarrant County for that week. At the time the general panel were sworn in by Judge Young on the morning of September 21st no motion was made at that time to disqualify the panel because of the reasons urged in the motion presented to the Ninety-sixth District Court on the morning of September 22nd. Upon presentation of the motion testimony was adduced and it appears from the testimony that the officers designated by the statute met between the 1st and 15th of August, 1925, and filled the jury wheel for the ensuing year. The wheel was first emptied and then refilled with cards containing the names of all taxpaying citizens of Tarrant County for the year 1924—understood by such officers to be qualified jurors. These names were taken from a list furnished by the tax collector. This list included the names of all the citizens of Tarrant County over twenty-one years of age who had paid taxes to the tax collector of Tarrant County for the year 1924, including those who had merely paid a poll tax without having rendered their taxes in the tax assessor's office. The wheel so filled from which the panel in this case was drawn contained approximately four or five thousand more names than were contained on the tax lists in the tax assessor's office for the current year of 1925. The action of the officers filling the wheel from the tax collector's lists rather than from the lists in the tax assessor's office was deliberate. These officers previous to filling the wheel had investigated the situation and had received opinions pro and con as to

the proper lists from which to take the names, including an opinion from the Attorney-General to the effect that the tax lists in the tax assessor's office were the proper lists from which to get the names.

"Between the first of January and the last of April, 1925, various citizens of Tarrant County rendered their taxes in the tax assessor's office. Each rendition was made on a separate piece of paper furnished for that purpose and placed in a bound volume in alphabetical order. On the last of April, 1925, these inventories were completed and constituted in book form in alphabetical list of all the citizens in Tarrant County who rendered their taxes for the year 1925. The rendition was closed on the last of April and no further names were added to the alphabetical inventories for the year. From this alphabetical list or inventory the assessor's rolls were made up. These rolls contained the names of all those who had rendered their taxes for the year 1925, together with the property rendered on and the rendered value, and likewise such notations with respect to the value as the tax assessor might deem pertinent, and were made for the use of the tax collector and Commissioners Court. The rolls for the year 1925 were not completed until about September 21, 1925, and had not passed out of the possession of the tax assessor nor had they been approved by the Commissioners Court on the date the hearing on the appellant's motion to quash the jury panel was had.

"The designated officers filling the jury wheel for the year 1925 did not intentionally leave out of the wheel the names of any qualified jurors, nor did they intentionally place in the wheel the names of any unqualified jurors unless those names appearing on the tax collector's lists and not upon the tax lists in the assessor's office for the current year of 1925 were not qualified as jurors in Tarrant County.

"There were ninety-eight jurors impaneled in the Forty-eighth District Court on the morning of September 21 for that week. The names of fourteen of these did not appear upon the tax lists in the tax assessor's office for the current year 1925. The motion of appellant to quash the jury panel was overruled and thereupon the jury lists in this case were made up and delivered to counsel for the plaintiff and defendant. Thereupon the appellant presented a motion to quash the jury lists in the case and discharge the prospective jurors whose names appeared thereon for the same reasons as urged in the motion to discharge the jury panel and re-introduced the same testimony in support of its motion. Likewise it appeared that several prospective

jurors whose names appeared on the jury list in the case were not citizens whose names appeared on the tax lists in the tax assessor's office for the current year 1925. This motion was overruled by the court, to which an exception was reserved.

"Thereupon the appellant challenged jointly and severally each prospective juror whose name appeared upon the jury list for the same reasons and specifically peremptorily challenged each prospective juror whose name did not appear upon the tax lists in the tax assessor's office for the current year. These challenges were overruled, to which the appellant reserved an exception.

"Thereupon the jury in the case was selected and the names of three of the twelve jurors selected did not appear on the tax lists in the tax assessor's office for the current year 1925.

"The appellant, among other assignments of error duly presented in its motion for new trial and brought forward in this court, assigns error upon the part of the trial court in the particulars set out. In view of the importance of these assignments and the fact that we are not entirely agreed, it is deemed advisable to certify to the Honorable Supreme Court the following questions:

"1. Did the trial court err in overruling the appellant's motion to quash the jury panel on the ground therein stated?

"2. Did the trial court err in overruling the appellant's motion to quash the jury lists tendered in the case?

"3. Did the trial court err in refusing to sustain the peremptory challenges made by the appellant to each prospective juror whose name appeared upon the jury lists in the case that did not appear upon the tax lists in the tax assessor's office for the current year 1925?

"4. Did the appellant waive its right, if any it had, to quash the jury panel or raise the questions presented in its motion to quash the jury list tendered in the case and its individual challenges to the jurors by failing to present a motion on Monday, September 21, in the Forty-eighth District Court to quash the jury panel at the time the jury for the week was impaneled to try cases in all the courts of Tarrant County?"

OPINION.

Arts. 2094 and 2095 of the Revised Statutes of 1925 read as follows:

"Art. 2094. Between the first and fifteenth days of August of each year, in all counties having therein a city containing a

population aggregating twenty thousand or more people, as shown by the preceding Federal census, the tax collector or one of his deputies, together with the tax assessor or one of his deputies, together with the sheriff or one of his deputies, and the county clerk or one of his deputies, and the district clerk or one of his deputies, shall meet at the courthouse of their county and select from the list of qualified jurors of such county as shown by the tax lists in the tax assessor's office for the current year, the jurors for service in the district and county courts of such county for the ensuing year in the manner hereinafter provided.

"Art. 2095.   Said officers shall write the names of all men who are known to be qualified jurors under the law, residing in their respective counties, on separate cards of uniform size and color, writing also on said cards, whenever possible, the post-office address of each juror so selected.   The cards containing said names shall be deposited in a circular hollow wheel, to be provided for such purpose by the Commissioners Court of the county.   Said wheel shall be made of iron or steel and shall be so constructed as to freely revolve on its axle; and shall be kept locked at all times, except when in use as hereinafter provided, by the use of two separate locks, so arranged that the key to one will not open the other lock; and said wheel, and the clasps thereto attached into which the locks shall be fitted, shall be so arranged that said wheel cannot be opened unless both of said locks are unlocked at the time the wheel is opened.   The keys to such locks shall be kept, one by the sheriff and the other by the district clerk.   The sheriff and the clerk shall not open such wheel, nor permit the same to be opened by any person, except at the time and in the manner and by the persons herein specified; but said sheriff and clerk shall keep such wheel when not in use, in a safe and secure place, where the same cannot be tampered with."

Answers to the questions certified depend upon the meaning and effect of that clause of Art. 2094 which provides that the officers named in such article shall "select from the list of qualified jurors of such county as shown by the tax lists in the tax assessor's office for the current year, the jurors for service in the district and county courts of such county for the ensuing year in the manner hereinafter provided."

In determining the meaning and effect of such clause, it becomes important to discover the general purpose of the Legislature in enacting the general scheme of legislation commonly known as "The Jury Wheel Law," of which the statutes quoted

above form a part. The original Jury Wheel Act was passed in the year 1907 (Acts Reg. Sess., 1907, Chap. 139). At that time the qualifications of jurors, generally throughout the State, had been fixed by pre-existing statutes on the subject; which statutes constitute Arts. 2133, *et seq.* of the Revised Statutes of 1925. In the original Jury Wheel Act of 1907, there was disclosed no purpose, on the part of the Legislature, to modify these pre-existing statutes in their application to the class of counties to which the Act related, or to render unavailable for jury service in these counties any man having the qualifications prescribed in such statutes. The primary purpose of said Act, as may fairly be gathered from the Act as a whole, was to abolish in counties containing a city of large population, the element of discretion that is involved in the selection, by Jury Commissioners, of the individual jurors to make up jury panels; and to substitute a mode of procedure for securing jury panels by mechanical means whereby the exercise of choice in the selection of men for jury service is eliminated. That it was the intention of the Legislature to provide means for the collection of the names of all men in the county who had the qualifications of jurors under existing law, and for the placing of these names in the jury wheel from which jury panels were to be drawn from time to time as provided in the Act, appears with reasonable certainty from the title and body of the Act. The title recites the purpose of the Act to be "to provide for the selection of jurors in all counties in Texas having a city or cities therein, which city or cities contain a population aggregating 20,000 or more people;" and to repeal, so far as the above mentioned counties are affected by them, the provisions of existing statutes relating to the selection of jurors by Jury Commissioners. Sec. 1 of the Act provided that the officers designated therein shall "select from the jualified jurors of the county the jurors for service in the district and county courts in such county for the ensuing two years, in the manner hereinafter provided." Sec. 2 provided, as is now provided in the first clause of Art. 2095 quoted above, that "said officers shall write the names of all men who are known to be qualified jurors under the law, residing in their respective counties, on separate cards of uniform size and color, writing also on said cards, whenever possible, the postoffice address of the jurors so selected." Sec. 3 provided for the deposit of these cards in the jury wheel, as is provided in Art. 2095 quoted above; and the remaining sections of the Act provided the mode of drawing jury panels from the wheel, by a different set of officers, from time to time as needed

by the courts. It is to be observed that the only means afforded by the Act for the ascertainment and collection of names to be placed in the jury wheel was the personal knowledge of the officers designated. These officers were under no specific duty to resort to any other expedient than mental operations in attempting to call to mind the names of all those men known to them to be qualified jurors of the county. This being the case, the number of men rendered available for jury service, by having their names placed in the jury wheel, was subject to be regulated by the extent of information possessed by said officers, and the powers of recollection of these officers, unaided by reference to any other source of information.

In 1911 the Legislature amended Art. 1 of said Act, by replacing the clause thereof which has been quoted, with the clause of Art. 2094 set out above. Aside from changing the time of filling the jury wheel from every second year to every year, the only change effected in the Jury Wheel Law by said amendment was to require said officers to look to the tax lists in the tax assessor's office in making selection of names to be placed in the jury wheel; but did not relieve them of the duty to place in the jury wheel the names of all men residing in the county, who were known to them to be qualified jurors under the law, as was prescribed by Sec. 2 of the original Act. We think, therefore, that the provisions of Arts. 2094 and 2095 contemplate a reasonably diligent effort, on the part of the officers designated therein, to collect and place in the jury wheel the names of all men in the county having the qualifications of jurors as prescribed by the statutes on that subject, to the end that these men shall be available as jurors when jury panels are drawn from the wheel. The information contained in the tax lists in the tax assessor's office for the current year is but an aid provided by law for the performance of this duty.

There is no room to doubt that the officers who are required to fill the jury wheel have no authority to arbitrarily withhold from the wheel the names of men appearing on the tax lists in the tax assessor's office, who are known by such officers to be qualified jurors of the county. It is furthermore reasonably clear, however, that these officers have authority under the law, and it is their duty, to place in the wheel the names of all men who, through any other means, are found by them to be qualified jurors of the county. In the exercise of reasonable diligence in the performance of their duty in this respect, it is proper for said officers to have recourse to the latest approved tax rolls of

the county.    This course was pursued on the occasion in question here, and the requirements of law were substantially satisfied in all respects.

It is deemed proper to say here, that in seeking the legislative intent in the clause of the statute in question, we have kept in mind the rule that a statute should not be given a meaning which renders its validity doubtful, if it be reasonably susceptible of another meaning.    If, as contended by counsel, the clause in question has for its purpose the exclusion from jury service, in counties containing a city with the population named in the Act, of all men whose names do not appear on the tax lists in the assessor's office, irrespective of other qualifications possessed, the validity of the clause would be open to doubt. The Legislature has undoubted authority to prescribe, by general law, the qualifications of jurors.    But, since we have been unable to discover any relation between a man's capacity and fitness for jury service and the size of population of the county in which he resides, or of a city of such county, we should entertain grave doubts as to the constitutionality of a law which undertook to establish a standard, by which the capacity and fitness of men for jury service are determined, which varies in the different counties of the State, with no basis for such variation other than population.    Our interpretation of the meaning and purpose of the clause in question frees it of this doubt.

We recommend that Questions Nos. 1 and 2, propounded in the certificate, be answered "No."    If, by the term "peremptory challenges," as used in Question 3, is meant challenges for cause on the ground therein indicated, said Question 3 should be answered "No." An answer to Question 4 is rendered unnecessary.

Opinion of the Commission of Appeals answering certified questions adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.