

# THE ATTORNEY GENERAL

## OF TEXAS

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

November 20, 1970

Honorable Franklin Smith
County Attorney
Nueces County Courthouse
Corpus Christi, Texas 78401

Opinion No. M- 734

Re: Refilling destroyed jury wheel.

Dear Mr. Smith:

This is in response to your inquiry concerning the refilling of the jury wheel in your county.

You have stated that the inclement weather has caused the gummed labels which were used to fill your jury wheel to become so badly stuck together as to effectively "destroy" the contents. You have also outlined the difficulty of re-constructing the contents of the jury wheel from several lists. You then ask the following questions:

1. If the officials of Nueces County who are responsible for furnishing the jury wheel, i.e., Tax Assessor, Sheriff, District Clerk and County Clerk, determine that the contents of the jury wheel have been "destroyed" and that such wheel should be refurnished, and such officials determine that the voter registration list fairly and reasonably reflects a cross-section of the population of the county suitable in character and intelligence for jury duty, and the use of the voter registration list exclusively is not tantamount to a subterfuge to discriminate against identifiable elements of the population, is it legally permissible for them to refurnish the jury wheel using only the voter registration list, in view of Article 2094, et seq., Revised Civil Statutes of Texas?

2. In the event this question is answered in the negative, what are the proper sources from which jurors' names should be taken?

Article 2094, Revised Civil Statutes, provides in pertinent part:

". . . The tax collector or one of his deputies, together
with the sheriff or one of his deputies, and the County
Clerk or one of his deputies, and the District Clerk or
one of his deputies, shall meet at the Courthouse of their
county and select from the list of qualified jurors of such
county as shown by the tax lists in the Tax Assessor's
office for the current year, the jurors for service in the
District and County Courts of such county for the ensuing
year, in the manner hereinafter provided." (Emphasis
added.)

We make no comment as to the validity of your factual presumption.

We feel that the following language from Northern Texas Traction
Co. v. Bryan, 294 S.W. 527, 530 (Tex. Comm. App. 1927, Opinion adopted
by Sup. Ct.), is controlling:

"In the Original Jury Wheel Act of 1907 there was
disclosed no purpose on the part of the Legislature to
modify these pre-existing statutes in their application
to the class of counties to which the act related, or to
render unavailable for jury service in these counties any
man having the qualifications prescribed in such statutes.
The primary purpose of said act as may fairly be gathered
from the act as a whole, was to abolish in counties con-
taining a city of large population the element of discretion
that is involved in the selection, by jury commissioners,
of the individual jurors to make up jury panels and to sub-
stitute a mode of procedure for securing jury panels by
mechanical means, whereby the exercise of choice in the
selection of men for jury service is eliminated. That it
was the intention of the Legislature to provide means for
the collection of the names of all men in the county who
had the qualifications of jurors under existing law, and
for the placing of these names in the jury wheel from which

jury panels were to be drawn from time to time as provided in the act appears with reasonable certainty from the title and body of the act. The title recites the purpose of the act to be "to provide for the selection of jurors in all counties in Texas having a city or cities therein, which city or cities contain a population, aggregating 20,000 or more people"; and to repeal, so far as the above-mentioned counties are affected by them, the provisions of existing statutes relating to the selection of jurors by Jury Commissioners. Section 1 of the act provided that the officers designated therein shall "select from the qualified jurors of the county the jurors for service in the district and county courts in such county for the ensuing two years, in the manner hereinafter provided." Section 2 provided, as is now provided in the first clause of article 2095 quoted above, that "the aforesaid officers shall write the names of all men who are known to be qualified jurors under the law, residing in their respective counties, on separate cards of uniform size and color, writing also on said cards, whenever possible, the post-office address of the jurors so selected." Section 3 provided for the deposit of these cards in the jury wheel, as is provided in article 2095 quoted above; and the remaining sections of the act provided the mode of drawing jury panels from the wheel, by a different set of officers, from time to time as needed by the courts. It is to be observed that the only means afforded by the act for the ascertainment and collection of names to be placed in the jury wheel was the personal knowledge of the officers designated. These officers were under no specific duty to resort to any other expedient than mental operations in attempting to call to mind the names of all those men known to them to be qualified jurors of the county. This being the case, the number of men rendered available for jury service, by having their names placed in the jury wheel, was subject to be regulated by the extent of information possessed by said officers and the powers of recollection of these officers, unaided by reference to any other source of information.

"[1] In 1911 (chapter 82) the Legislature amended article 1 of said act by replacing the clause thereof which

has been quoted with the clause of article 2094 set out above. Aside from changing the time of filling the jury wheel from every second year to every year, the only change effected in the Jury Wheel Law by said amendment was to require said officers to look to the tax lists in the tax assessor's office in making selection of names to be placed in the jury wheel; but did not relieve them of the duty to place in the jury wheel the names of all men residing in the county who were known to them to be qualified jurors under the law, as was prescribed by section 2 of the original act. We think, therefore, that the provisions of articles 2094 and 2095 contemplate a reasonably diligent effort, on the part of the officers designated therein, to collect and place in the jury wheel the names of all men in the county having the qualifications of jurors as prescribed by the statutes on that subject, to the end that these men shall be available as jurors when jury panels are drawn from the wheel. The information contained in the tax lists in the tax assessor's office for the current year is but an aid provided by law for the performance of his duty.

"There is no room to doubt that the officers who are required to fill the jury wheel have no authority to arbitrarily withhold from the wheel the names of men appearing on the tax lists in the tax assessor's office, who are known by such officers to be qualified jurors of the county. It is further-more reasonably clear, however, that these officers have authority under the law, and it is their duty, to place in the wheel the names of all men who, through any other means, are found by them to be qualified jurors of the county. In the exercise of reasonable diligence in the performance of their duty in this respect, it is proper for said officers to have recourse to the latest approved tax rolls of the county. This course was pursued on the occasion in question here, and the requirements of law were substantially satisfied in all respects.

"[2] It is deemed proper to say here that, in seeking the legislative intent in the clause of the statute in question, we have kept in mind the rule that a statute should not be given a meaning which renders its validity doubtful, if it be reason-ably susceptible of another meaning. If, as contended by

counsel, the clause in question has for its purpose the ex-
clusion from jury service, in counties containing a city
with the population named in the act, of all men whose
names do not appear on the tax lists in the assessor's of-
fice, irrespective of other qualifications possessed, the
validity of the clause would be open to doubt. The Legis-
lature has undoubted authority to prescribe, by general
law, the qualifications of jurors. But, since we have been
unable to discover any relation between a man's capacity
and fitness for jury service and the size of population of
the county in which he resides, or of a city of such county,
we should entertain grave doubts as to the constitutionality
of a law which undertook to establish a standard, by which
the capacity and fitness of men for jury service are deter-
mined, which varies in the different counties of the state,
with no basis for such variation other than population. Our
interpretation of the meaning and purpose of the clause in
question frees it of this doubt." (Emphasis added.)

In view of the foregoing authority, that portion of Article 2094 re-
ferring to use of the tax rendition list is to be construed as an aid, and the
proper interpretation of the statute is that it does not justify the use of the
voter registration list as the sole or only source to refurnish the jury wheel.
Article 2095, Vernon's Civil Statutes, directs the officials to place into the
jury wheel "the names of all persons who are known to be qualified jurors
under the law, residing in their respective counties." Article 2133, Vernon's
Civil Statutes, provides that the "failure to register to vote as required by
law shall not be held to disqualify . . . for jury service in any instance."
Since the Legislature has recognized and directed that tax lists (rendition
lists) shall be used, public officials are required to follow such directory
provisions and it is to be legally presumed that they will do so. This is not
to say, however, that failure to do so will necessarily result in reversible
error of a case where harm is not shown to have resulted to the defendant.
See Harrington v. State, 424 S.W.2d 237, 243-244 (Tex.Civ.App. 1968).

To require officials arbitrarily to use voter registration lists only
and to prohibit use of tax rendition lists and other sources is tantamount to
preventing qualified jurors from being selected in the jury wheel only because
of their failure to register to vote. Such action would violate express legis-
lative intent and direction in Article 2133. We, therefore, must reject such

a construction and apply that construction which will harmonize the statutes.

It is, therefore, our opinion that the jury wheel in Texas may not be filled by reference to the voter registration list as the sole source for jurors, since the officers required to fill the jury wheel have an affirmative legal duty to exercise reasonable diligence to place therein all who may be found by them to be qualified jurors, with the right of recourse to the latest approved tax rolls of the county as well as the voter registration list.

We are unable to answer your second question as it necessarily requires factual determinations this office has no authority to make. For general guidelines in this regard, you are referred to the cited authorities.

<u>S U M M A R Y</u>

Where the contents of a jury wheel have been "destroyed" it must be refilled under the provisions of Article 2094 and not by reference solely to the voter registration list.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Howard M. Fender
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Jay Floyd
Max Flusche
John Reese
Jack Sparks

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant