Joe SHELBY, Appellant,

v.

The STATE of Texas, Appellee.

No. 45152.

Court of Criminal Appeals of Texas.

March 8, 1972.

Rehearing Denied May 9, 1972.

---

Chappell & McFall, Crenshaw, Dupree & Milam, Lubbock, for appellant.

Blair Cherry, Jr., Dist. Atty., Richard Monroe, Asst. Dist. Atty., Lubbock, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for burglary with intent to commit theft where the punishment was assessed at five years.

It presents questions concerning the eligibility of 18 year olds to serve as jurors, the constitutionality of using the voter registration lists as the sole source for names to be placed in the jury wheel and related questions.

Appellant vigorously urges that the trial court erred in overruling his motion to quash the jury panel in view of his claim that the panel was drawn in violation of the United States Constitution and because of the "irreconcilable conflict" within the provisions of Senate Bill No. 369 (Acts 1971, 62nd Leg., ch. 369, p. 2797) and the further conflict between such bill and the provisions of Article 35.12, Vernon's Ann.C.C.P.

At his trial on October 4, 1971, in the 140th District Court the 18 year old appellant, a non-registered voter and resident of Lubbock, urged his motion. It was stipulated that Lubbock County officials during the first fifteen days of August, 1971, had filled the jury wheel utilizing the *then* current voter registration lists but eliminating therefrom the names of all persons shown to be between 18 and 21 years of age as well as all other persons who were qualified jurors but who had not registered to vote. It was further stipulated that "according to the 1970 Federal census there were approximately 101,000 persons in Lubbock County over the age of twenty-one years who would be qualified voters if they registered" to vote; that the Lubbock County jury wheel filled August, 1970, contained in excess of 100,000 names; that there were 49,536 registered voters "appearing on the list of Lubbock County as of August 1, 1971"; that there are approximately 12,000 persons between the ages of 18 and 21 years in Lubbock County who are registered and qualified voters.[1]

The motion to quash was overruled.

It appears that in filling the jury wheel the Lubbock County officials relied upon Article 2094, Vernon's Ann.Civ.St., as amended by said Senate Bill No. 369, ef-

---

1. These 18 to 21 year old individuals had been added to the 1971 voter registration list by virtue of the Voting Rights Act of 1965, § 302, as amended 42 U.S.C.A., § 1973bb–1 (1970). In United States v. Arizona, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970), the United States Supreme Court held that 1970 amendments to the Voting Rights Act (Pub.L. 91–285, 84 Stat. 314), enfranchising 18 year olds in Federal elections, abolishing literacy tests as requisite to vote, and abolishing state durational residency re- quirements were within the power of Congress to enact, but that portion of the amendment enfranchising 18 year olds in state and local elections was beyond the power of Congress to enact. See now Twenty-sixth Amendment to the United States Constitution, now ratified.

As to qualifications for voting in this state prior to enactment of 1970 amendments to said Voting Rights Act, see Article VI, §§ 1–2, Vernon's Ann.St.Const.; Articles 5.01 and 5.02, Texas Election Code, V.A.T.S.

fective July 15, 1971, requiring them to use the voter registration list as the sole and mandatory source for the wheel and upon Article 2133, V.A.C.S., requiring jurors to be 21 years of age as well as Attorney General's Opinion M-911 (July 20, 1971).

In support of his contention the court erred in overruling his motion appellant argues that at the time the jury wheel was being filled the Twenty-sixth Amendment[2] to the United States Constitution had been sufficiently ratified,[3] and he further relies upon the provisions of said Senate Bill No. 369.

As we understand it, appellant contends that the right of suffrage thus conferred upon those citizens 18 years or older necessarily carried with it the right to serve as jurors; that our statutes relating to qualifications of jurors must be construed in light of the adoption of the Twenty-sixth Amendment to the United States Constitution.

■ We cannot agree with the contention advanced. The said Twenty-sixth Amendment did not confer upon citizens 18 years or older the right to vote but simply prohibited discrimination against them on account of age.

■ The Dallas Court of Civil Appeals when faced with a strikingly similar question concerning the Nineteenth Amendment held in Glover v. Cobb et al., 123 S.W.2d 794 (1939-writ ref'd) that a qualified voter is not ipso facto a qualified juror. Cf.

Harper v. State, 90 Tex.Cr.R. 252, 234 S.W. 909 (1921). We concur.

■ Surely the states still retain the right to determine the qualifications of the jurors to serve in their own courts and may place the burden of such public duty on certain age groups, even providing exemption, though not disqualification, on account of age. We do not view the United States Constitution as prohibiting a state from confining juror selection to citizens, persons within certain ages, etc., Glover v. Cobb, supra; Strauder v. West Virginia, 100 U.S. 303, 310, 25 L.Ed. 664.[4]

In Carter v. Jury Comm. of Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549, the court said:

"It has long been accepted that the Constitution does not forbid the States to prescribe relevant qualifications for their jurors. The States remain free to confine the selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment and fair character. Our duty to protect the federal constitutional rights of all does not mean we must or should impose on States our conception of the proper source of jury lists, so long as the source reflects a cross section of the population suitable in character and intelligence for that civic duty."

Thus we hold that 18 year olds are not qualified jurors.

2. Said amendment provides:
"Section 1. The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.
"Section 2. The Congress shall have power to enforce this article by appropriate legislation.

3. Publication of the certifying statement of the Administrator of General Services that the Amendment had become valid was made on July 5, 1971, F.R.Doc. 71-

9691, 36 FR 12725. Texas ratified the Amendment on May 5, 1971.

4. In Strauder the United States Supreme Court held the West Virginia statute limiting jury duty to members of the white race unconstitutional but stated:
"We do not say that within limits from which it is not exceeded by the amendment a State may not prescribe the qualifications of its jurors, and in so doing make discriminations . . . [The aim of the Fourteenth Amendment] was against discrimination because of race or color." 100 U.S. at 310, 25 L.Ed. 664.

We turn now to appellant's contention that there is an internal conflict between the provisions of said Senate Bill No. 369, §§ 1 and 11.

Section 1 of such bill amended Article 2094, V.A.C.S., to read:

"Between the first and fifteenth days of August of each year, in each county in this state, the tax collector, sheriff, county clerk, and district clerk of the county, each in person or represented by one of his deputies, shall meet at the county courthouse and reconstitute the jury wheel, *using as the sole and mandatory source,* all names on the voter registration lists from all precincts in the county." (emphasis supplied).

Section 11 of the said Senate Bill No. 369 amended subsection 1 of Article 2133, V.A.C.S., so that such statute now reads:

"All persons both male and female *over twenty-one (21) years of age* are competent jurors, unless disqualified under some provision of this chapter. No person shall be qualified to serve as a juror who does not possess the following qualifications:

"1. He must be a citizen of the State and of the County in which he is to serve, and qualified under the Constitution and laws to vote in said County.

"2. He must be of sound mind and good moral character.

"3. He must be able to read and write, except as otherwise provided herein.

"4. He must not have served as a juror for six (6) days during the preceding six (6) months in the District Court, or during the preceding three (3) months in the County Court.

"5. He must not have been convicted of felony.

"6. He must not be under indictment or other legal accusation of theft or of any felony.

. . . . . .

"Whenever it shall be made to appear to the Court that the requisite number of jurors able to read and write cannot be found within the County, the Court may dispense with the exception provided for in the third subdivision; and the Court may in like manner dispense with the exception provided for in the fourth subdivision, when the County is so sparsely populated as to make its enforcement seriously inconvenient.

"Where the word 'he' is used in this Section it shall be used in the generic term so as to include both male and female persons." (emphasis supplied).

Appellant contends that the provision in Article 2133, supra, dealing with the qualifications of jurors does not require the prospective juror to be a registered voter while the general provision in Article 2094, supra, relating to the filling of jury wheels "would in effect require such registration as otherwise his name would never appear on a jury list."

We cannot agree that such a conflict exists. If anything the amendment to subsection 1 of Article 2133, supra, makes it more harmonious with Article 2094, supra, as amended. Prior to amendment said subsection 1 of Article 2133, supra, read as follows:

"1. He must be a citizen of the state and of the County in which he is to serve, and qualified under the Constitution and laws to vote in said County; *provided, that his failure to register to vote as required by law shall not be held to disqualify him for jury service in any instance.*" (emphasis supplied) (Acts 1969, 61st Leg., ch. 411, p. 1364)

The italicized portion above was deleted by provisions of Senate Bill No. 369.

 Article 2133, supra, fixing the qualifications of petit jurors generally throughout the state and Article 2094, supra, both being general laws must be so

construed together as to give a reasonable effect to all of them if such construction be possible. See Atty. Gen. Op. 0–5521 (1943). And this is particularly true when both statutes are amended by the same legislative enactment. We find no conflict between the statutes and have no difficulty in construing the statutes together. We find nothing in such statutes to require the designated officials to ignore the qualifications of jurors set forth in Article 2133, supra, and to automatically include in the jury wheel all names on the voter registration list regardless of the officials' knowledge of lack of age, felony conviction, lack of citizenship, etc. on the part of an individual.

It is true that prior to the enactment of Senate Bill No. 369, Article 2095, V.A.C.S., required the designated officials to place in the jury wheel "the names of all persons who are known to be qualified under the law." And, it is noted that such statute was amended by section 2 of Senate Bill No. 369 and the language above mentioned was changed to read "the names of all persons on said precinct lists" obviously referring back to the voter registration lists mentioned in said Article 2094. The revised version of Article 2095, supra, however retained the provision that "[t]he typists, under the direction, control and supervision of the District Clerk shall type the names and addresses of *qualified jurors* upon the cards as herein described." (emphasis supplied)

■ It is appellant's contention that the statutes in question do not expressly or impliedly provide that names of registered voters between the ages of 18 and 21 years are to be excluded from the jury wheel. We do not agree.

■ Appellant further urges that a conflict exists between the provisions of said Senate Bill No. 369 (Section 1 amending Article 2094, supra, and Section 11 amending Article 2133, supra) and the provisions of Article 35.12, V.A.C.C.P., and that a distinction is to be drawn between the qualifications for jurors in civil and criminal cases. See also Article 35.16, V.A. C.C.P.

It is appellant's contention that the Code of Criminal Procedure permits a juror to serve in a criminal case although not a registered voter if he is otherwise qualified to vote while the civil statutes require that he be a registered qualified voter.

Part of the difficulty stems from the failure of said Senate Bill No. 369 to mention at all the various statutes in the Code of Criminal Procedure. In 1969, the Legislature in eliminating the freeholder-householder qualification for grand and petit jury service amended Article 2133, V.A. C.S., as well as Articles 35.12, 35.16, 35.19, 19.08 and 19.23 of the Code of Criminal Procedure. (Acts 1969, 61st Leg., ch. 412, p. 1364).

Prior to the enactment of said Senate Bill No. 369, Article 2133, supra, and Articles 35.12 and 35.16, supra, all contained similar phrases relating to the qualifications of jurors. The phraseology in Article 2133 has already been noted. Article 35.16, supra, provided that a juror must be a qualified voter in the state and county and provides, *"however, the failure to pay a poll tax or register to vote shall not be a disqualification."* Article 35.12, supra, relating to the mode of testing qualifications of jurors in criminal cases provided and provides in part for the asking of the following question:

"1. Except for the payment of poll tax or registration, are you a qualified voter in this county and State under the Constitution and Laws of this State?"

Senate Bill No. 369, § 11, eliminated from Article 2133, supra, the underscored portion above, but did not seek to expressly eliminate the same from Article 35.16, supra, or to amend Article 35.12, supra. It did provide in Section 16 thereof that *"all statutes,* rules of civil procedure, or case laws in conflict herewith are hereby repealed *or modified* to the extent of such conflict."

It is observed that the State Constitution directs that the Legislature shall prescribe by law the qualifications of grand and petit jurors. Article XVI, § 19, Vernon's Ann.St.Const.

And moving to appellant's contention we note that in 35 Tex.Jur.2d, Jury, § 180, pp. 251–252, it is written:

"By virtue of an express provision of the general statute enacted in 1876 (Acts 1876, pp. 78, 82, Secs. 1, 26) the disqualifications there enumerated applied alike to civil and criminal cases. But in the revision of 1879 there are separate provisions for civil and criminal cases. It has been decided that the Legislature evinced the intent that the qualifications prescribed by the Code of Criminal Procedure should be read independently of those in the Revised Statutes, which, in this respect, are applicable only to civil suits."

Hunter v. State, 30 Tex.App. 314, 17 S.W. 414 (1891) and Benton v. State, 52 Tex.Cr.R. 360, 107 S.W. 838 (1908), were cited in support of the last statement made. In those cases, it was held that the fact a prospective juror had served six days during the preceding six months in District Court or three days during the preceding three months in County Court did not disqualify him as a juror in a criminal case since such prior service was not listed in the Code of Criminal Procedure as a disqualification but was found only in the civil statutes.

We note further that under Article 2133, V.A.C.S., only persons 21 years of age are qualified while we find no express reference in the Code of Criminal Procedure that a juror must have attained his majority. In the past, this has been held to be implied, however, by the then voting qualification that a voter be 21 years of age. Trueblood v. State, 1 Tex.App. 650; Hill v. State, 99 Tex.Cr.R. 290, 269 S.W. 90 (1925).

Although there have been some differences, it has been said that the civil and criminal statutes relating to general qualifications of jurors are practically identical. See 35 Tex.Jur.2d, Jury § 181 at 252.

The first jury wheel statutes were enacted in 1907 and have been continually expanded until they now encompass all counties. See said Senate Bill No. 369; Attorney General's Opinion M–903. Over the years where it was applicable the jury wheel law was held to be a special law which superseded the general law on jury selection. Garza v. State, 138 Tex.Cr.R. 403, 136 S.W.2d 861 (1940). Where such law was applicable, it was the method used for the selection of all jury panels in the county and district courts. Without tracing the history of any differences that might have existed between civil and criminal cases, cf. 35 Tex.Jur.2d, Jury § 181, p. 252, we note that in the 1965 Code of Criminal Procedure, the Legislature enacted Article 33.-09, V.A.C.C.P., which provides:

"Jury panels, including special venires, for the trial of criminal cases shall be selected and summoned (with return on summons) in the same manner as the selection of panels for the trial of civil cases except as otherwise provided in this Code."

The Special Commentary to said article in vol. 2, V.A.C.C.P., p. 532, reads:

"The Legislature, in lieu of the detailed provisions as to jury wheels, etc., which were generally repetitious of the civil statutes, adopted the method provided in civil cases for selecting and summoning jury panels including special venires."

Further, the "interchangeable jury law" (Article 2101, V.A.C.S.) (also amended by S.B. No. 369) applies generally to those counties that maintain three or more district courts.

This statute provides that jury wheel law governs except as modified by the special provisions of the statute. It also provides the district judges shall meet and determine the number of jurors "that are reasonably necessary for jury service in all the

county courts at law, county courts and district courts" for each week during the year. It further provides that the jurors when impaneled shall constitute a general jury for service as jurors in all county and district courts in said county, and shall be used interchangeably in all of said courts.

"Under this law jurors for all the courts of the county are sworn and tested as to their qualifications. Then they are sent to the apartment assigned them, whence they are summoned to the various courtrooms for service as cases are reached." 35 Tex.Jur.2d, Jury § 77, p. 122.

Curry v. State, 157 Tex.Cr.R. 237, 248 S.W.2d 166 (1952), held that the interchangeable jury law (Article 2101, supra), Rules of Civil Procedure, Rule 223, and then Article 626, V.A.C.C.P., having reference to the organization of juries to try civil and criminal cases from a common source must of necessity be construed together to determine their meaning. Cozby v. State, 452 S.W.2d 471 (Tex.Cr.App.1970), rejected the contention that Article 2101, supra, did not authorize interchangeable jury service in criminal cases.

In the instant case, the court will take judicial notice that Lubbock County operates under the "interchangeable jury law" and further note that the same is supported by the record.

We find no conflict in the statutes as urged by the appellant. If the names of prospective jurors are placed in the jury wheel in accordance with Article 2094, supra, solely from the voter registration list and are qualified in accordance with Article 2133, supra, for use in an interchangeable jury panel for both civil and criminal cases, then the exceptions provided in Articles 35.12 and 35.16, supra, are rendered generally meaningless if they were not in fact repealed by said Section 16 of Senate Bill No. 396. The voir dire examination of the jury panel in the instant case is not in the record before us. Appellant does not claim, as we understand it,

that any prospective juror assigned as a member of the jury panel for the case had his name placed in the jury wheel despite the absence of his name on the voter registration list and that he escaped detection as a qualified juror in both civil and criminal cases as a member of the interchangeable jury panel, and suddenly appeared as a member of the jury panel in the instant case, and was allowed to serve as a juror because of the provisions of Articles 35.12 and 35.16 in question over objection.

Next appellant urges that the manner in which the jury panel was drawn violated the requirements of the Fourteenth Amendment, United States Constitution. It is his contention that he was deprived of a cross section of the community since the Senate Bill No. 369 amending Article 2094, supra, limits the source from which prospective jurors are to be taken solely to the "voter registration lists from all precincts in the county." He contends he was not accorded due process and equal protection of the laws.

He calls attention to the fact that the number of prospective jurors in the jury wheel in Lubbock County was reduced by at least 50% after the wheel was filled in accordance with the provisions of Senate Bill No. 369, that a "hot" race for county commissioner or other precinct officer might cause an unusually large number of voter registrations in that precinct and that for years to come the prospective jurors may well be drawn from one section or precinct of the county. He also urges that the provisions of Senate Bill No. 369 will permit citizens to escape jury duty if they are willing to forego the right to vote and that many will do so for business, economic or personal reasons.

Under the state constitution in force in 1871, juries were composed of registered voters (Constitution 1869, Art. XII, Sec. 45). This was the only qualification for jurors at the time all statutes adopted under earlier constitutions being without force. Maloy v. State, 33 Tex. 599 (Tex. Sup.Ct. 1870–1871 Term); Wilson v. State,

35 Tex. 365, 366 (Tex.Sup.Ct. 1870–1871 Term).

The constitutional provision adopted in 1876, however, provided that the Legislature should prescribe the qualifications of petit jurors. Article XVI, § 19, Vernon's Ann.St.Const. See Long v. State, 1 Tex. App. 709 (1877).

In 1907, the original Jury Wheel Act was passed (Acts 1907, 30th Leg., ch. 139, p. 269). At that time the qualifications of jurors generally were established by the statute or statutes which were the forerunners of present Article 2133, supra. This original jury wheel law did not disclose an intent on the part of the Legislature to change these qualifications. However, it is observed that the only means afforded by the act for the ascertainment of names to be placed in the jury wheel was the personal knowledge of certain designated officials. "This being the case the number of men rendered available for jury service by having their names placed in the jury wheel was subject to be regulated by the extent of information possessed by said officers and the powers of recollection of these officers, unaided by reference to any source of information." Northern Texas Traction Co. v. Bryan, 116 Tex. 479, 294 S.W. 527 (Comm. of App. 1927).

In 1911, the Legislature amended the jury wheel law and in so doing provided that the designated officials should look to the "tax lists in the Tax Assessor's office" in making selections of the names to be placed in the jury wheel. Ch. 82. The amendment left in full effect that part of the act requiring said officials "to place in the jury wheel the names of all men residing in the County who are known to them to be qualified jurors under the laws." Northern Texas Traction Co. v. Bryan, supra.

The "tax lists" referred to were interpreted to mean the rendered and unrendered property tax lists in the Tax Assessor's office, and did not include the then poll tax list, although that list could be used to aid the designated officials in the performance of their duty to see that the names of all known qualified jurors in the county were placed in the jury wheel. See Attorney General's Opinion O–5521 (1942); Attorney General's Opinion C–642 (1966). Cf. Briscoe v. State, 106 Tex.Cr.R. 402, 292 S.W. 893 (1927); McNeal v. State, 101 Tex.Cr.R. 114, 274 S.W. 981 (1925); Knott v. State, 100 Tex.Cr.R. 468, 274 S.W. 978 (1925). The exclusive use of the poll tax lists for this purpose was condemned in Atwood v. State, 96 Tex.Cr.R. 249, 257 S.W. 563 (1924);[5] and in Northern Texas Traction Co. v. Bryan, 294 S.W. 527 (Comm. of App. 1927), it was held that the requirement in Article 2094, V.A.C.S., that the designated officials look to the "tax lists" was an aid in selecting qualified jurors and did not constitute a limitation upon their function.

Since these holdings, we have witnessed the demise of the poll tax as a prerequisite to the right of suffrage. Article VI, § 2, Vernon's Ann.St.Const., as amended November 8, 1966, effective February 1, 1968, voter registration lists took the place of the poll tax lists.

Against this background and history, the Legislature has now prescribed that the sole and mandatory source for the jury wheel shall be the voter registration lists. It is difficult to ascertain from Senate Bill No. 369 the legislative intent and purpose in restricting the source for names to be placed in the jury wheel. We do observe that at the same legislative session, Senate Bill No. 51 was enacted making a number of changes in our voter registration laws by amending the Texas Election Code (Acts 1971, 62nd Leg., Reg.Sess., ch. 827, p. 2509). Among the amendments we find the addi-

---

5. The main reason which militated against the exclusive use of the poll tax list for the purpose of the jury wheel law was that the poll tax list from its very nature could not and would not contain a complete list of all persons in the county qualified for jury service.

tion of Section 50b to the Texas Election Code which provides, in part, as follows:

"50b—Extension or renewal of registration by vote or by request for renewal; cancellation for failure to renew.

"Subdivision 1. Beginning with the elections held during the 1972 voting year, whenever a registered voter votes in a primary or general election for nomination or election of State and County officers, his registration is automatically extended or renewed for the succeeding three voting years unless, prior to the beginning of the first succeeding year, the registration is cancelled under some provision of this code."

■ Said Senate Bill No. 51 became effective August 30, 1971 after the jury wheel (from which the jury panel in the instant case was drawn) was filled. It is too early to determine just what effect this bill will have when taken in conjunction with the provision of Senate Bill No. 369 upon the source of names for the jury wheel. That source, of course, must, as a federal constitutional requirement, reflect a cross section of the population suitable in character and intelligence for jury duty. See Carter v. Jury Comm. of Greene County, supra.[6]

■ Further, the data adduced by the appellant is too tentative and fragmentary to establish that the 1971 voter registration lists used in filling the jury wheel in 1971 in Lubbock County did not reflect a cross section of the population of the county suitable in character and intelligence for the civic duty of serving as jurors. This is true although the appellant did show a decrease in the number of prospective jurors by more than 50%. We simply can-

not conclude on the basis of the record before us or as a matter of judicial notice that the use of the voter registration lists as the sole source for prospective jurors deprived this appellant of due process and equal protection of the laws, nor are we prepared to announce, in light of presently available information, a per se constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was.

All of appellant's remaining grounds of error relate to the court's instructions to the jury. He complains the court erred in refusing to charge the jury on the law of circumstantial evidence and on the affirmative defense of intent. He also urges the court erred in restricting the definition of "breaking" and in refusing "to apply reasonable doubt to all the circumstances and evidence in the case."

Numerous Lubbock city police officers testified that near midnight on April 26 or shortly thereafter in the early morning hours of April 27, 1971, they arrested the appellant and the two other men, Joe Carl Maden and Sammy Cooper, inside Levine's Department Store building; that all three men wore socks on their hands; that the knob on the store's safe had been knocked off and there were marks where it had been hit with a chisel and a punch. Two sledge hammers, some tire tools, a punch and a chisel were found near the safe. Entry had been obtained by knocking a hole in the wall of the trash room of the building.

Marvin Specter, Manager of the store, testified he had care, custody, and control of the building and its contents and that he did not give the appellant or anyone else permission to break and enter the building. He related that he had personally locked

---

6. "It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community." Smith v. Texas, 311 U.S. 128, at 130, 61 S.Ct. 164, at 165, 85 L.Ed.2d 84, at 86. See also Brooks v. Beto, 366 F.2d 1 (5th Cir. 1966) and cases there cited.

In Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1964), we are told that the jury list need not be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group.

and secured the building at 6 p. m., on April 26, 1971, and he returned about 12:30 a. m., on April 27, 1971, and found three men in custody of the police, a hole in his wall and the knob knocked off his safe which had not been its condition when he left the store around 6 p. m.

Testifying in his own behalf, the appellant, who was on probation for breaking and entering a motor vehicle, stated that on the night in question he was riding around with Maden and Cooper and drank "about" a six-pack of beer and a half-pint of gin and had passed out around 10 p. m., and the next thing he remembered, he came to at the police station the next morning. He denied he broke into the store and did not intend to steal anything from Levine's.

 As to his complaint that the court erred in failing to charge on the law of circumstantial evidence, Leaderbrand v. State, 457 S.W.2d 557 (Tex.Cr.App.1970), has been decided adversely to his claim. There, it was held that a charge on circumstantial evidence was not required where the defendant was seen leaving the burglarized building. See also Alexander v. State, Tex.Cr.App., 475 S.W.2d 772 (1972). In the instant case, officers found appellant and his companions inside the store crawling around on the floor with socks on their hands. As to appellant's contention that no one testified they actually saw him break into the building, it is observed that when nighttime burglary is alleged, evidence of an actual breaking is not essential to a conviction. Leaderbrand v. State, supra. Further, it noted that when a person is found in the "house" of another at night without the consent of the owner, it is presumed that entry was for the purpose of committing theft. Leaderbrand v. State, supra; Green v. State, 435 S.W.2d 513 (Tex.Cr.App.1969).

 The court charged the jury as follows:

"In this case the indictment having charged that burglarious entry was made with the intent to commit theft, before

you would be warranted in finding the defendant guilty, you must be satisfied from the evidence, beyond a reasonable doubt, that the entry, if any, was so made with the intent to commit the specific crime of theft."

This particular instruction read in conjunction with the entire charge adequately protected appellant's rights and the court did not err in refusing a special requested charge on his specific intent. See also Article 36.19, V.A.C.C.P.

The court defined "breaking" in his charge substantially in the language of Article 1394, Vernon's Ann.P.C. The charge reads as follows:

"By the term 'breaking' is meant that the entry must be made with actual force applied to the house. The slightest force, however, is sufficient to constitute breaking, such as lifting of a latch of a door that is shut or raising a window or pulling open a door or window."

 Appellant complains the charge was too restrictive and the court should have instructed on the facts in evidence.

In 4 Branch's Ann.P.C.2d ed., § 2532, p. 859, it is written:

"Where it is alleged that defendant 'did break and enter' it is proper for the charge to inform the jury what is a breaking, and it is better to directly instruct the jury on the facts in evidence, which, if true, would show a breaking, such as 'the opening of a closed door is a breaking;' 'the entry at an unusual place is a breaking;' 'the raising of a window and entering therein is a breaking and entry;' and the like, although it is not reversible to include in the definition of breaking all or any of the statutory illustrations which find no support in the testimony . . . ."

We perceive no error in the court's definition of "breaking", cf. Lucas v. State, 463 S.W.2d 200 (Tex.Cr.App.1971), and no support in the record for appellant's sug-

gestions as to amending such definition contained in his written objection thereto.

 And we cannot agree that the court failed to properly apply reasonable doubt "to all the circumstances and evidence in the case." The remaining complaints to the court's charge are likewise without merit.

The judgment is affirmed.